Chief Justice Robertson
delivered, the Opinion of the Court. Judge Marshall did not sit in this case.
On the first day of October, 1812 — only a few days prior to his death, in the military service of the Northwestern Army of the United States, Nathaniel G. S. Hart, then of Lexington, Kentucky, made the following last will:—
“ I give and bequeath unto my wife Anna Edwards “ Hart and my children, in equal shares, the whole of “ my property, after the payment of my just and lawful “ debts; the property which has accrued to me from my “ wife, and what is yet due her as heiress of Col. N. Gist, “ deceased, being considered part of my estate. It is “ my will that the rents and profits of my estate, during “ the widowhood of my wife, shall be at her disposal for li the maintenance of herself and children.' In the event “ of her marriage, my executors shall pay over to her, “ her proportion of my property as above devised, and u Will hold the property devised to my children, and the “ rents and profits thereof, to be disposed of to the best *2 “ advantage for them. I give to my executors full power u and ample powers to make any conveyance of propei> “ ty for which I am liable — to make any sale of real or “ PersonaI property which they may think proper, and u generally to do every thing which may appear to them “ more advantageous for my heirs. I nominate and ap- “ point Henry Clay, John Hart, and my wife Anna Ed- “ wards Hart, executors and executrix of this my last “ will and testament.
(Signed) “ Nat. G. S. Hart.”
John Hart, who alone was qualified and acted as executor of the will, made, in the County Court of Fayette, in 1814, a partial settlement, ascertaining against him a balance then in his hands, of eleven hundred and eighty seven dollars fifty eight cents; and, having died insolvent, in 1820, left an account of his receipts and disbursements, as executor, from the date of the settlement to May, 1820, and a note, executed by himself and his nephew Thomas Hart, for the balance admitted by him to be then due to the estate of N. G. S. Hart, amounting to between eight and nine thousand dollars.
It appears that, among other things, he had charged himself, as executor, with twenty six hundred and eighty ■seven dollars, i-eceived by him, for land which had descended to Anna Edwards Hart from her father, and which, after the death of the testator, she had covenanted to convey to one Robinet, for that price, which he undertook to pay to her, and did afterwards pay, either to her, 'or to John Hart, either as executor, or as her agent ■and bailee; and also, with twenty three hundred and forty one dollars sixty cents, which he had received on •account of a pension allowed to her as the widow of her deceased husband, by the government of the United States; and also, with three hundred and thirty five dollars thirty five cents, as her distributive share of the estate of her sister Davidilla, who had died after the decease of the testator; and also, with twelvé hundred and ■twenty five dollars received for land of the testator sold, since his death, to William McBean; and also, with ten per cent, interest, for balances admitted, from time to *3 time, to be due to the estate, and used by himself and his nephew, Thomas, as partners in trade.
Decree of tire-Circuit Court-.
Insisting that the foregoing items were improperly charged by John Hart against himself, as executor, and did not belong to his ejecutorial account, Henry Clay and Elijah W. Craig, who were the sureties in his fidu-cial bond, filed a bill in chancery against Henry C. Hart, the only surviving child of the testator — his only other child, as well as Anna E. Hart and John Hart, having previously died intestate, and there being no personal representative of either of them — praying for a just settlement and correction of the accounts of their deceased principal, and for exoneration from liability as sureties, on the ground that — as they insisted and still insist— there is not, on a proper adjustment of charges and credits, according to equitable principles, any thing due by' the executor, or, consequently, by themselves as his sureties.
Henry C. Hart resisted the relief sought by the bill, and also insisted that, if the sureties were hot chargeable with all or any of the sums already herein enumerated and described, advances made by John Hart to the surviving family of his testator, should be applied as credits on his personal liability, for which there was no security, and should not be allowed as credits on his execu-torial account for the benefit of his sureties.
The Circuit Court expunged, from the charges against the executor, the sums received by John Hart for the pension to Mrs. Hart, and for her interest in her sister’s estate; reduced the interest, charged by the executor against himself, to six per cent., excepting so far as he had actually received more; allowed five per cent, for his services, for which he had made no charge in his account, and which the County Court had not expressly noticed in the partial settlement of 1814, and distributed the advances made to Mrs. A. E. Hart and her children,, between the fund charged by the decree against John> Hart, as executor, and that allotted by it to him in his-personal capacity, as credits upon each fund, in proportion to the relative amount of each; and having, by this-process, ascertained that four thousand nine hundred1. *4 and sixty nine dollars seventy four cents remained due by the executor — decreed that Clay and Craig, as sureties, should pay that sum to Henry C, Hart, as sole 'surviving devisee.
Objections to the decree by Clay and Craig.
From that decree these cross appeals, by both parties, have been brought to this Court — Clay and Craig insisting that the Circuit Judge erred in charging them with the sums received by John Hart for land, and on account of the interest of Mrs. A. E. Hart in her father’s estate; and Henry C. Hart objecting to the principle of average fixed by the decree for the application óf credits for advances made to the family, to the allowance of compensation, and to the reduction of interest from ten to six per cent.
These antagonist points, being necessarily intervolved, will be considered together, as they should be had there been but one appeal.
1. The most comprehensive and important objection urged against the decree by Clay and Craig, is, that they are charged by it with the estate which belonged to Mrs. A. E. Hart in her own right, at the testator’s death, and none of which, as they insist, passed by his will.— And, in support of this position, they urged four points: First — that the will should not be understood as embracing any other portion of her property than that which was movable, and to which, therefore, an absolute right, either in possession or in action, had accrued to the husband, in consequence of his marriage. Second — that, if the will should be understood as including her immovable property, in which the testator, as her husband, had no interest beyond his own life, still the devise was, to . that extent, void, unless she, by election, made it effectual; and that there is no sufficient proof of any such effectual election by her, to hold as devisee, and thereby waive her independent and pre-existent rights of property. Third — that there is no proof that the executor sold her land; and that, even if he did, he alone had no authority to do so; and therefore, the sale not having been a fiducial act, the sureties are not liable for the price. And, fourth — that the official' bond, by which alone they are bound, contains no stipulation binding *5 them to any greater extent than for a legal administration of the goods and chattels, and the payment of the legacies out of the value of the goods and chattels belonging to the testator, or bequeathed by his will.
A testator devises all his property to his wife and children — adding ‘the property which has accrued to me from my wife , and what is yet due her as heiress ofColonelN. Gist, dec d, being considered as part of my estate’: held, that this devise embraces— not only the testator's own estate, and the movable property of his wife, in possession or in action, but estate ofevery kind which had accrued to him in right of his wife, and which she would be entitled to from Col. N. G. Consequently, as she could not take underand against the will, she had an election.
These several points will be briefly considered in the numerical order in which they have just been stated.
First. When, for the purpose of explaining what estate he intended by the devise to his wife and children, of “the whole of (his) property,” the testator said he meant to include — Hlie property which has accrued to me from, my “ wife, and that which is yet due her as heiress of Col. JV. “ Gist, deceased”- — he intended, as we think, to embrace all the estate of every kind which had accrued to him, or to which his wife would be entitled from JV1 Gist, her deceased father. “ That which is yet due her as heiress” cannot, consistently, be restricted,, as insisted on by Clay and Craig, to her chattel interests in action, excluding her interest in her father’s real estate; first, because, as her chases in action would survive to her, the testator, as husband merely, had no more right to dispose of that interest by his will than he had to devise her title to land; and therefore, as he evidently intended to make testamentary disposition of either the one or the other class of her interest, or of both, and as his language applies equally to both classes, we do not feel authorized to discriminate between them, and confine the will to her movable property in action. Second, because though 11 due her,” if used with strict philological precision and propriety, would rather import personalty alone, yet, not only should those words be understood. according to their popular signification, but “ due her as heiress,” whether understood in the common or technical sense, necessarily imports her entire rights as one of the legal representatives of her father. And, moreover, we can neither perceive nor présume any motive for attempting to bequeath her personal property, which would not apply equally to a devise of her real estate. Wherefore, it seems to us, that the testator intended that his own and the whole of his wife’s estate should constitute one common fund, and be distributed equally between herself and children as his dev- *6 isees: and therefore, as Mrs. Hart could not hold as devisee under the will, and in her own right also against the will, a case for election was presented to her.
Where a tes tato r devises a greater or other interest in his wile’s estate than lie had, if she elects to abide by the will, her independent right to the property devised by it, is thereby waived; and, because of the es-toppel resulting from her election, it will be deemed property which he hud a right to devise. And—
Where a man died, testate, and his widow lived six years longer, and neverrenoun ced the will, nor claimed dower or distribution, as widow, it is held that it must be presumed, that, with a perfect understanding of her rights, and of the effect of the Will upon her interest, she elected to take under it; and were it concededthat she might revoke her election, as unad visedly made,her heir cannot bo al lowed to do it af ter her death.
Second. Although the will could not, proprio vigore, pass any greater or other interest than the testator held and had a right to transmit, yet, if Mrs. Hart elected to abide the will and claim its provisions, she thereby waived her independent right to property embraced by it; and thus that property passed under the will in consequence of an estoppel arising from her own voluntary act of election, and should, for all purposes, be considered as the estate of the testator which he had a perfect right to dispose of effectually by his last will and testament.
Whether Mrs. Hart should be deemed to have made a binding election to hold under the will, and not to assert any claim against if, is a more doubtful question. But it is our opinion that the facts, properly considered, incline strongly to the conclusion that she, voluntarily and understanding^, elected to approve and uphold the will in all its objects and provisions — understood as we haye interpreted it. As she lived more than six years after the death of the testator, and, not only never renounced the provisions of the will, but seemed to acquiesce in and hold under it, and. never claimed any right to dower or distribution as a widow unprovided for by an approved will, there can be no doubt that she considered herself as a devisee. And we do not feel authorized to presume that she did not understand her rights, or the consequences of her acquiescence; on the contrary, we should presume that she understood that her whole estate, as well as that of her husband, was embraced by the will, and that she could not hold' her own estate in her own right, and any portion, also, of her husband’s as one of his devisees; and from the fact that, as early as 1814, the value of both estates seems to have been, to a reasonable and satisfactory extent, well ascertained, we are not permitted to infer that any election she may have made could have been set aside for want of information by her respecting her interests, rights and duties. Nor does it appear that she ever claimed in her own right, even the money for which her own land *7 was sold to Robinet; for it is evident that, both John Hart and herself considered it a part of the fund placed by the will in his hands as executor.
Though a naked power given .to several persons by name can be executed only by the whole of them, ¡md tho’, accoiding to the common law, such a power given to ex’ors by name would not survive, yet it is now well settled that a power given to several executors, not by name, hut as executors merely, will survive, and may be executed by any one or more of them who accept the appointment.
The distinction which was recog nized at common law, between a case where a pow er was given¡ by a will to persons by name (tho’ described as executors ) and a case where a pow er was given to executors merely as such, was destroyed by a stat. of H. viii. c. 4, which de-dared that, where there was a diree tion to ex’ors by name to sell land, andsomeofthem refused to act or renounced, any one or more of them, who accep ted the nomination, might execute such mandatory powers. And there is a similar, and perhaps more comprehensive, statute in force in this State. But these statutes apply only to cases where the testator has directed a sale; not to any case where there is no peremptory instruction, but a mere discretionary authority to sell.
*7 We are indisposed, therefore, to consider Mrs. Hart as having died a recusant devisee.
Moreover, as Mrs. Hart survived her husband several years, and, during all that time, apparently acquiesced in his will, we should not now be inclined to decide, either that she hafl made no valid election, or that her surviving child should be permitted now to disturb her election, even though it were conceded that she might have been permitted to revoke it in her life time.
Third. If, as we have supposed to have been the fact, the land to which Mrs. Hart was entitled as' “heiress” of her father, should be deemed to have passed 'by her husband’s will, the acting executor had as unquestioned power over it as he had over any land of the testator himself.
Had John Hart, as sole executor, any power to sell land devised by the Will to the testator’s wife and children, subject to a discretionary authority in the executors nominated by him to sell any property which they (might) think proper — and generally to do every thing which (might) appear advantageous for (his) heirsT'>
Though a naked power given to several persons by name cannot be executed by a less number than all of them, and though also, according to the common law, such a power given to executors nominatim would not survive, yet it is now well settled that a naked power, given to several executors, not by name, but as executors, eo nomine et virtute officii, would survive, or might be executed by any of the nominees who might accept the appointment.
The common law presumed that, when such a power was given to persons by name, the adjunct “executors” was used for identification merely, and that the trust was personal; but that, when the power was given to executors as such, the testator confided it to the official agency which should execute his entire will, even though all the nominated agents might not accept.
By the common law, a power given to several, coupled with the legal title, or a personal interest, would survive to the survivor or survivors.
Where the will gave to several executors ‘ample power to make any sale of real and.personal pro perty which they might think proper, and general- ■ ly to do every thing that might appear more advantageous to the heirs,’ and one only of the executors undertook the trust-as there was no devise to them of the legal title,nor of any personal interest, nor any direction to sell, but the authority given was an authority to decide whether a sale should be made: it is held, that the one ex’orwas not competent to exercise that authority, and sales made by him , not being within the scope of his authority, tho’he assumed to make them as ex’or, his sureties are not liable for the moneys received by him from such sales.
*8 The statute of H. VIII. c. 4. destroyed that distinction, whenever there was a direction to executors by name to sell land, and some of them refused to act or renounced, by declaring that, in such a case, whoever of them should accept the nomination — whether one or more — might execute such a mandatory power. Ram on Assets &c. 52, and Sugden on Powers, Law Library Ed. 75.
And a statute of 1797 of this State (1 Stat. Law, 666,) declares that “ the sale and conveyance of lands devised “ to be sold shall be made by the executors or such of “ them as shall undertake the execution of the will, if “ no other person be thereby appointed, or if the person “ so . appointed shall refuse to perform the trust, or die “ before he has completed it.”
But, as each of these enactments applies exclusively and alone to cases in which the testator has directed a sale, neither of them can have any application to a case, like this, where there is no peremptory instruction to sell, but a discretionary authority only has been delegated. ,
According to the common law, also, a power coupled with the legal title or a personal interest would survive to the survivors or survivor of several persons upon whom the power and interest or title had been conferred; because, as the interest or title survived, the powrer might be fed and kept alive by it, and should therefore also survive. And hence, if the trustees of the power were devisees, not of the power merely, but of the. legal title also, any one survivor might execute the power.
But in this case, there was no such interest or title devised to the executors; nor, so far as the authority to sell land was concerned, was there any enforcible trust; because the authority to sell was not compulsive, but permissive and optional merely.
It is evident, however, that, as the power in this case was given to the “executors'” collectively, John Hart might, according to the common law, have executed it alone — had the testator directed a sale, instead of merely *9 delegating an authority to decide whether there should be a sale or not.
But the authority, as given by the will, being, as it seems to us evidently to have been, a pergonal trust confided by the testator to the judgment and discretion of all the persons nominated, aqd not being merely executive, or the ministerial execution of a prescribed and peremptory duty — would not have survived, and could not have been lawfully executed by John Hart alone.
This Court has often decided that, the statute of this State to which we have just referred, does not authorize one executor to sell land when there had been no direction to sell, but an authority to sell had been confided to the judgment of executors. And the like doctrine has been long and incontrovertibly settled in England, not only in reference to the statute of H. VIII. supra, but upon the principles of the common law.— Sudgen, L. L. Ed. 78-80, 119-20; Moor 61, pl. 172; Cole vs. Wade, 16th, Ves. 27, 45, 46-7, and Walter vs. Maunde, 19 Ibid. 424.
In the case in Moor, Weston and all the judges concurred in the opinion that, when a discretion to sell was confided to executors, as such a trust implied personal confidence in the judgment of each of the nominees, the power could not be executed by a less number than all of them. And Lord Eldon, in the cases just referred to in 16th and 19th Vesey, approved, illustrated and confirmed that doctrine. And is it not as reasonable as it is authoritative? When a testator confides an important decision to the judgment of several in whom he has confidence, should it be presumed that, merely because they are nominated as his executors, he intended that any one of them should alone decide in the event of a refusal by the others to act, or of their death? Is it not more rational and safer to presume that, his confidence was not in the office, but altogether in the united judgment and discretion of the persons selected by him?
The question is at last one of intention, more than of technical law; and we are unable to perceive in the will now before us, any evidence of any other intention *10 than that presumed by the law from a testamentary authority given to executors to exercise tlieir judgments respecting the expediency of selling land devised to others, and for the benefit of the devisees. The authority given was a trust which no one of the trustees could execute, consistently with the presumed object and intention of confiding it to the judgment and discretion of all of them, though described as executors.
An ex?or’s"bonci, with the condition prescribed by the statute , binds the sureties for a faithful performance by the ex’or, of his legal obligations: no further. So far as creditors are concerned , the sureties are bound for. a faithful administration of the legal assets — i. e. the goods, chattels and credits of the testator. They are also bound for the payment and distribution of all legacies.— But, as the ex’or has no concern with devises, (i. e. testamentary dispositions of real estate,) the sureties incur no responsibility respecting them.— So—
*10 There is an obvious and essential difference between selling land directed by the testator to be sold by executors, and deciding, for the testator and his devisees, whether a conversion of land into money, at any indefinite period, will be expedient; and therefore, when more than one executor has been nominated, the statutes of H. VIII. and of this State, amendatory of the common law, did not extend the power of one executor beyond a sale of land peremptorily directed by the testator himself.
We are therefore of the opinion that John Hart, as sole acting executor, had no authority to sell any of the land devised by the testator to his wife and children.
And, as the sureties of the executor are responsible ■only for his failing to do something which it was his duty to do, or for his misdoing something which he had an authority to do, they are not liable for any portion of the amount for which the land of the devisees was sold, even though it may have been sold by their principal in the assumed character of executor.
Moreover, it is far from being certain that John Hart ■sold the land which had descended to Mrs. Hart from her father; for, though he received the consideration, and seems to have charged himself with it as executor, the bond for a title was given by herself. It is not material, however, to decide this matter definitively.
Fourth. Although the executorial bond is not in this record, yet we infer from an uncontroverted allegation made by Clay and Craig, that it contained no other condition than that prescribed by the statute; and that is the following, in substance, so far as may be material to the question we are now about to consider: (1) “that “ the executor do make a true and perfect inventory of “ all and singular the goods, chattels and credits of the said *11 “deceased;” (2) “ and the same goods, chattels and cred- “ its do well and truly administer according to law;” (3) and “ do well and truly pay and deliver all the legacies “ contained and specified in the said will, as far. as the “ said goods, chattels and credits will extend, according “ to the value thereof, and as the law will charge him.” This is the utmost of the undertaking for which the sureties can be held responsible upon their bond.
Where land is de vised to the testa, tor’s wife y children, though the ' will gives the ex ecutor a discretionary power to sell it, and tho’ the proceeds will pass to the gener al devisees in lieu of the land itself —as the disposition of the land is a devise, and not a legacy, (even in equity) the sureties of the ex’or cannot bo held responsible for the proceeds received by him. The maxim that,. in equity,.lands directed to be con verted into money should be considered as money, does not apply to a contingent or discretionary power of. conversion.— Where a testator directs a sale of land by his executor, to whom-he devises it for.that purpose — the proceeds to be paid to, or applied to the use of, legatees — the proceeds maybe considered as legacies, for the payment of which the executor s bond will bind his sureties. But where the land passes in the first instance to the devisees, it is not embraced by the stipulation in the bond for the payment of legacies ; and its being changed into money after-wards, by virtue of a power given to the executor, would not change the devise inlo;a legacy, nor make the sureties liable for the proceeds, as a legacy.
The obligation imposed by the bond being altogether legal, the sureties cannot be liable for any other breach than that of the legal duties of the executor embraced by the condition of the bond. So far as creditors were concerned, the sureties were liable only for the faithful administrationFof legal assets, or “the goods, chattels and credits ” of the testator. And therefore, though the proceeds of land, if charged with the payment of debts, constituted equitable assets in the hands of the executor, the sureties were not liable therefor. And — the executor having no concern respecting devises (or testamentary dispositions of real estate,) and legacies, for which he was responsible, being bequests of chattels, or movables, or personalty — 'the sureties are not responsible for land devised to the wife and children of the testator, even though it had been subject to a discretionary power of sale and conversion, by the executor, and even though, also, the proceeds of such sale may have passed, by the will, to the general devisees, in lieu of the land itself; because, as to the land, the testamentary disposition of it was a devise, and not a legacy, in judgment of law, and was not even a legacy in equity; for the maxim that, in equity, land directed to be converted into money, shall be considered as money, does not apply to a contingent or discretionary power of conversion. The bond binds the sureties for only legal legacies, to the extent of the legal assets, and as far as “ the law (would) charge ” the *12 executor, as executor. The proceeds of the land, even if the sales had been authoritatively made by the executor, were not legal assets; nor did the Zato charge the executor therewith, as a “legacybecause it was not the price of the land that was bequeathed, but the land itself was devised. Had the testator, instead of devising the land to his wife and children, directed a sale of it by his executor, and bequeathed to them, in the first instance and directly, the proceeds of the sale, they might have been entitled as legatees, and not as devisees, and the condition of the executorial bond, as to legacies, might have embraced their interest, because it would have been a legacy. But, at the date of the bond, the land, having passed to the devisees, was not embraced by the stipulation respecting the payment of legacies; and the power of prospective conversion of the land into money, did not change the dewise into a legacy, nor could the subsequent execution of that trust retroact so as to make the sureties liable for the proceeds as money bequeathed, or, in - other words, as a legacy within the legal condition of the bond. If the executor authoritatively sold the land, he acted, in the sale of it, as a trustee for the benefit of the devisees of the land, and did not hold the price as legal assets, or- as a legal legacy, but as a trust fund, cognizable by a court of equity only; and therefore, the condition of the bond, contemplating only legal rights and obligations, would not apply to that equitable fund.— Nor was it at all necessary- for the security of the devi-sees, that the bond should have secured that fund; because, having the legal title to the land, they could, by obvious legal means, have retained that title until they had been secured or indemnified; and thus they had, without a bond, the best possible security. If that security had been neglected, the consequence must have been charged to the confidence of the devisees of the land, or to that of Mrs. Hart alone, who held the legal title in trust, when she elected to abide the will.
The ex’or making the sale, in such case, would act as a trastee, and hold the proceeds as a trust fund, cognizable in a court of equi ty : not as legal assets.
Where a testator directs a sale of land, peremptorily, not contingently— so that none of it can, in any event, go to his heirs or devi-sees, it may he treated, in equity, at the instant of his death, as a portion of his per sonal estate; and a direct and unconditional gift of the proceeds maybe considered as a legacy, within the condition of the executorial bond, and for which the sureties will be liable.
*12 Had the testator peremptorily directed the sale of the land, (and not for a special purpose that might fail, or not require the sale of the whole of it,) so that none of it could, in any event, go to his heirs or devisees, it *13 would have been treated in equity, at the instant of his death, as a portion of his personal estate; and a direct and unconditional testamentary gift to his wife and children of the produce of the sale, might have been considered a “legacy,” for the payment of which the executor was bound by law, and, consequently, by the condition of his official bond. But the testator did not elect, so far as his own act or decision was concerned, thus to convert the land into money, and to bequeath the price -as a legacy; but he chose to make no change, and to give the land itself as a devise. And surely that which the intention and act of the testator, and therefore the law, made a devise, could not, by the execution of a discretionary power in the executor, afterwards be transmuted into a legacy. If it was a devise at the testator’s death, it never was a legacy. The purpose of the testator was to give the land; but, as a sale of it might become beneficial to the devisees, he authorized his executors to sell if they should decide that a sale would be advantageous. It was not their duty to sell. Their sale could not have changed the character or legal effect of the will, and converted into b legacy that which the testator had made a devise. In the language of Sir John Leach, in 4th Madd., “a devisor may give to his devisee “ either land or the price of land, at his pleasure — and “ the devisee must receive it in the quality in which it “ was given, and cannot intercept the purpose of the “ testator.” The testator having devised the land, his wife and children took, at his death, as devisees, and not as legatees; and that which was then a devise, could never, so far as the legal liability of the executor’s sureties was concerned, become a legacy, so as to bind them beyond the extent of their legal responsibility at the date of their undertaking.
We know that, in the case of Moore et al. vs. Waller's Heirs, 1 Mar. 491, our predecessors said, that, “accord- “ ing to the just import of the bond, (just such an one <£ as this,) he (the executor’s surety) must be supposed “ accountable for all legacies for which the executor is by “ law chargeable, whether they relate to the personal *14 “ estate or grow out of sales directed to be made of the u testator’s land.”
The sureties of an ex’or cannot be made liable for funds which the ex’or received as agent or trustee for a legatee, though he has charged himself with them in his executorial ac counts.
For dioses in ac tion of a wife,bequeathed by her husband’s will, in which she acquiesced, #which have come to the hands oftheex’r, he and his sureties are answerable.
But it does not appear, from the opinion in that case, that the land which was sold by the executor, had been devised by the testator to those who claimed the produce of sale as legatees; and we presume, not only that there had been no such devise, but that the direction to sell was peremptory, and that legacies in money were bequeathed out of the proceeds of sale. In such a case, the decision just quoted may have been right. But if, as in this case, the title to, the land passed by the will to the beneficiaries, with a discretionary power in the executor to sell the land, we could not yield to the opinion in that case as conclusive or satisfactory authority.
It is, therefore, our opinion, that, had John Hart, as executor, possessed authority to sell land, his sureties would not be responsible for the proceeds of sales.
Then, being of the opinion that Clay and Craig, as the sureties of John Hart, are not liable on their bond for the proceeds of land or real estate devised by the testator, the consequence is, that, in our judgment, the Circuit Court erred in charging them with the price of the land sold to Robinet, and with the price of that sold to Mc-Bean, and with the amount of Mrs. Gist’s interest in a land warrant.
And that-Court was clearly right in refusing to charge the sureties with the amount of Mrs. Hart’s pension, granted to her after the testator’s death, and with her interest in the estate of her sister Davidilla, who survived the testator; for it is perfectly evident that neither of these funds being any part of the testator’s estate, or that of his wife at his death, the will did not apply to either of them, and the executor had no authority, as executor, to interfere with either of them.
And it was also proper to charge the sureties — as the Circuit Court did — with the personal estate in action, which Mrs. Hart was entitled to at the time of her husband’s death, and which afterwards came to the hands of the executor; because it was embraced by the will, and was, therefore, not only legal assets, with her con *15 sent, but was a legacy with which the executor was chargeable u by law.”
Directions for an adjustment of the executorial accounts, under the peculiar and perplexing circumstances of this case, and in accordance with the principles a-bovesettled; and for ascertaining what proportion, of the defalcations of the deceased, ex’or, his sureties may be held liable for.
II. As according to the foregoing principles and deductions, a portion of the funds in the hands of John Hart belonged to him as executor, and another portion, belonging to Mrs. Hart in her own right, was held by him as her personal depository, and as in his accounts as rendered, he charged himself as executor with each alike, without discrimination, and credited himself in like manner, for disbursements made by him in paying debts and in contributing to the maintenance of herself and children as devisees under the will, it is, of course, now difficult, perhaps impossible, to adjust the accounts, as between the present parties, by any general rule or principle, in such a manner as to insure exact justice to all concerned. But, although, for reasons already suggested, the sureties are not responsible for the whole estate which came to the hands of their principal, nevertheless, as the testator charged his debts upon the whole estate which he disposed of by his will, and as all his own property and that, also, to which his wife was entitled at his death passed by his will to her and his children, and constituted a common fund for their maintenance, the Court should charge to .the entire fund which came to the hands of John Hart, all disbursements made by him in paying the testator’s debts, and should also charge to the profits of that fund and to those of the unsold real estate all contributions by the executor for the maintenance of the testator’s children. It will be impossible to ascertain with certainty what proportion of the advances made to Mrs. Hart were for her own benefit, and what for that of her children; but, on the return of the cause to the Court below, the Judge must, by the general facts now appearing, or by additional testimony which may be taken for that purpose, make an apportionment approximating the truth as nearly as the nature of the case may enable him. And then, in applying credits for- so much as shall be ascertained or presumed to have been advanced to Mrs. Hart’s sole use, another and still greater difficulty will be encountered; because she was entitled *16 to the use of two funds — that which she claimed under the will, and that which accrued to her in her own right after the death of the testator, and which was not disposed of by the will; that is, the amount of her pension and of her interest in Davidilla’s estate — the whole of which, without discrimination, was charged by John Hart against himself as executor. But obvious and formidable as is the difficulty here presented, it must be met; and, in our opinion, the only just mode of disposing of it now, is by distributing Mrs. Hart’s proportion of expenditures pari passu between the fund to which she was entitled under the will, and that which accrued to her after the testator’s death and independently of him; for, though one of the funds was secured and the other was not, yet it is evident that both were considered by herself and by John Hart, as constituting one common stock, and were drawn upon and applied accordingly; and it would not only be unreasonable now to disturb that understanding and application, but it would be unjust to the sureties of the executor.
An allowance to an ex’or of 5 per cent, approved, especially as he is charged with interest: his omission to charge for his services, in a former settlement, does not prove that he was not entitled, or waivedhis claim.
*16 But, as the sureties are not liable for the whole fund which passed to their principal, and as, nevertheless, the whole of it, as far as Mrs. Hart had an interest therein, is chargeable with its ratio of contribution for advances made to her sole use — it will, of course, be proper, in adjusting between the present parties the amount of credit to which the sureties are entitled for those advances, to make, for that special purpose, another' distribution of the aggregate fund charged by John Hart against himself, as executor; that is to consider as one fund, so much thereof as, according to this opinion, the sureties are liable for; and the residue — consisting of the price of lands sold and the amount of the pension, and of Mrs. Hart’s interest in Davidilla’s estate — another fund; and, allowing to the sureties a credit pro rata upon the fund with which they are chargeable.
It is to be understood, of course, that Mrs. Hart’s fund or interest under the will, was one third of what was constructively devised by it.
III. The Circuit Court allowed five per cent, for compensation for the services of the executor; and, the a *17 mount not being either unusual or unreasonable, we can perceive no objection to that part of the decree; and the more especially as the executor is charged with interest.
Anex’orlentont some of the funds ■ of the estate at more than 6 per cent, and made use of some in trade, and for the latter he charged himself, in his ( unsettled ) account, with interest at ten per cent.— the payment of the balance found ag’st him, after his death, devolving upon his sureties, it is decided that theyshall beheld accountable for the extra interest actually rec’d by the ex’or; but with six per ct. only, on the money he used himself.
There is nothing in the record showing, or in any degree tending to show, either that he did not intend to charge, or that he was not entitled to receive, the customary compensation. The partial settlement with the County Court, being silent as to the question of compensation, furnishes no presumption either against the right to it, or in favor of an intentional waiver of it.
IY. The only remaining point is that respecting the charge of interest against the executor. And, upon this subject, it is our opinion, that, according to just and equitable principles, the sureties are liable for six per cent, interest on so much of the fund chargeable against them he was used by their principal, and also for whatever more he actually received upon it for the use, either by himself or another; but that they are not liable for more than the legal rate of interest upon money used by himself, merely because he charged himself with more upon sums loaned to himself and his nephew, Thomas.
And therefore, according to the facts as they now appear, the only just objection to the decree respecting interest, is that the sureties may have been charged with too much.
Having thus settled the general principles by which a re-settlement of the accounts should be regulated, it is neither the intention nor province of this Court, in the present vexing and imperfect aspect of the facts of the case, to apply those principles to each item which has been embraced in the settlement hitherto made under the sanction of the Circuit Court. Nor does the assignment of errors by Hart call for or authorize any such minute and definitive analysis and final opinion upon his appeal. If, on the return of the case to the Court below for reinvestigation of the facts and the application to them of the principles herein prescribed, it shall appear that, in any respect, the settlement now set aside, and to be hereafter readjusted more satisfactorily, has been *18 prejudicial to him, he will, of course, be, so far, entitled to a favorable modification.
But, as the cas.e now stands, we cannot reverse the decree of the Court below on his appeal; because, so far as he has complained in this Court, we are not satisfied that there has been any substantial error to his prejudice. The aggregate amount decreed to him has not been shown to be less than he is entitled to demand.
Wherefore — for the foregoing .errors to the prejudice of Clay and Craig — the decree of the Court below is, on their appeal, reversed, and the cause remanded for such further proceedings and decree as -may be ascertained to be just and proper, and shall be consistent with the principles settled and prescribed by the foregoing opin- , ion.