JUDGE STITES
delivered the opinion oj? the cour-/:
In 1834, John Dawson, of Trigg county, by his last will, devised to Elizabeth Hayes, the wife of John Hayes, and daughter of the testator, two hundred acres of land, on which she and her husband then lived and continued to live up to 1849, when the husband died, leaving a last will, wherein he made the following devise:
*462 “ I give to my beloved wife, Elizabeth, the tract of land on which I now live during her natural life; also, I give to my wife the following negroes, to-wit: John, Caroline, Martha, and Leu, during her natural life, and at her death the said land and negroes that I give to her her natural life, I give to my son, John William Hayes, and my beloved daughter, Mary Elizabeth, to be equally divided.”
And also this further devise:
“The five negroes named as follows, to-wit: Joshua, William, Henry, Timothy, and Felix, negro children, to be left with my wife Elizabeth until she thinks proper to give them off to my said son and daughter, John William Hayes and Mary Elizabeth Hayes, to be equally divided between them two.”
Mrs. Elizabeth Hayes continued to reside upon the tract of land mentioned in the will up to the period of her death, which occurred in 1855, and during this time had the use and possession of the slaves mentioned in the will, claiming them as hers under the will.
Before she died, however, she made a will, devising to Martha Daniel, the only child of her daughter, Mary Elizabeth, the two hundred acres of land mentioned in the will of John Dawson and that of John W. Hayes, and appointed Thomas Dawson her trustee, giving him a contingent remainder interest in the land.
John William Hayes — one of the devisees in remainder of John W, Hayes, deceased, and who was a child of the testator by a former marriage — soon after the death of his stepmother, Mrs. Hayes, brought his suit in equity for a partition of the land and slaves held by her for life, and claimed an undivided moiety of the two hundred acres of land devised by Dawson to Mrs. Hayes, and by her to Martha Daniel — upon the ground that Mrs. Hayes had accepted the provisions of her husband’s will, and had thereby estopped herself from asserting title to the land under Dawson’s will, and in opposition to that of her husband. Or, in other words, that she had made a valid election under the will, and was thereby divested of any right which she might otherwise have asserted to the land.
This claim to a partition of the land was resisted by appel *463 lants, but was allowed by the circuit court, and a judgment of partition rendered. To reverse which judgment this appeal is prosecuted.
Whether the acts of Mrs. Hayes constituted a valid election, and thus divested her of any right to the land under her father’s will, is the only question raised, orto be considered.
The requisites essential to an election are:
1st. A clear intention on the part of the testator to pass the property;
2d. An intention that the party taking should take under the condition to elect;
3d. That the property be ascertained; and,
4th. That the party taking, or electing, should be cognizant of his rights. (Roper on Legacies, vol. 2, 390.)
That the testator, Hayes, intended to devise the land in question, cannot be doubted. It was his home-place, where he had lived for years, and on which he lived at the date of his will, and died. It is true that he owned several small tracts of land adjoining the home-tract, but they were mere additions thereto. Their size, when compared to that of the home-tract, forbids the idea that he could have intended to devise them, and not the home-place. The language of the will is, “the tract of land on which I now live.” It is clear and unequivocal — leaving no room for doubt as to what land was intended.
It is equally apparent that the testator intended that his wife should take under the condition to elect.
He must be presumed to have known her rights under her father’s will, and her right to renounce the provisions of his will and claim as dowress. With this knowledge, he made a provision for her by his will, conferring rights, with regard to his slaves, that she would not have been entitled to as dow-ress, and must have intended thus to submit to her the right to elect whether she would abide by his will, or renounce its provisions and claim as dowress of his estate, and devisee of her father. No other intention can be inferred from his acts.
No doubt can exist as to the ascertainment of the property. This was sufficiently defined by the will, as we have seen. *464 And the only remaining inquiry is, was Mrs. Hayes cognizant of her rights ?
It is contended that no presumption should be indulged against her — that she was ignorant, and could not be supposed to know either her rights as devisee of her father, or dowress of her husband’s estate.
To this it may be said that her capacity is not involved in the case, nor is it necessary to resort to presumptions to show her knowledge of her rights, both as devisee and dowress. The facts establish it. It is proved that she claimed, held, and enjoyed the slaves and other property devised to her by her husband; and not only so, but that after his death she instituted a proceeding in chancery against her co-devisees in her husband’s will, claiming contribution from them for moneys paid by her on his debts, by the sale of some of the slaves devised to her for life, and asserting her right thereto under his will. In this suit she exhibits the will, recites its provisions with respect to the land as well as the slaves, and shows a thorough knowledge of her rights conferred by the will.
That she knew the effect of the devise in her father’s will, is evident from her attempt to devise it to her grand-child. When she obtained this knowledge, does not appear. There is, however, no attempt made to show that it was after the time had passed for a renunciation of the will, or that when she did ascertain it, she made any effort to disclaim holding under the will of her husband. The presumption is, that she knew well the contents and effect of her father’s will, so soon as it was admitted to probate; and that, with this knowledge, she preferred taking and holding under her husband’s will rather than renounce it and resort to her legal rights as devisee of her father, and dowress.
Our conclusion upon the whole case, therefore, is, that the record shows all the requisites of a valid election on the part of Mrs. Hayes to take and hold under the will of her husband, and that, by such election, she divested herself of any right under her father’s will to the land in dispute.
This case bears a striking analogy to the case of Clay, &c., vs. Hart, (7 Dana, 1;) and the reasoning of the court in that case *465 upon the question of election applies with full force to the present.
The judgment of the circuit court conforms to the view we have taken, and, in our opinion, should not be disturbed. It is therefore affirmed.