Dickman, J.
The first question which naturally arises jpon the record is, Was Christina Miller so weak and imbecile that she was incapable of comprehending the transaction of executing the note and mortgage. It is quite manifest, that she was then laboring under the usual infirmities of old age — that time had somewhat impaired her physical strength, and that her mind had lost somewhat of its energy. But, upon a careful review of all the testimony, we are not prepared to say, that the district court erred in its conclusion that she was not incapacitated to make the note and mortgage at the time of their execution. She might not have been competent to profitably manage so large a sum of money as was loaned, and yet be sufficiently intelligent to know, that she had given her note and a mortgage to secure its payment, aiid that if not paid at maturity, the mortgaged property would be sold and so pass out of her hands. Whatever methods may have been resorted to by her relatives to induce her to incur the obligation, we do not find that any fraud or undue influence was practiced upon her by the insurance company or its agents; and we think, that the company received the note and mortgage without any notice of any disability on her part to execute the same.
It is claimed that the note given was usurious, by reason of its drawing interest at the rate of eight per cent, per annum payable semi-annually. This court has held in the case of Cook et al. v. Courtright, on error to the district court of Richland county, that under the act of May 4, 1869 (66 Ohio L., 91), a promissory note stipulating for the payment of the principal at a future time, with interest thereon at eight per cent, per annum payable semi-annually until paid, is not usurious. From that decision we find no reason to depart.
Other questions presented for the determination of the court, arise out of the election of the widow to take under the will of her husband. The testator devised and bequeathed to his wife in lieu of dower, the home farm on which he resided, containing about two hundred acres, *553 with all the goods and chattels thereon, during her natural life, together with the income of a large trust fund. The home farm was devised — at her death — to the testator’s grandson, William Miller. The presumption under the statute would be, that this provision in favor of the testator’s wife Avas in lieu of dower and her distributive share of the personal estate, unless an intention to the contrary plainly appeared in the will. But, the testator fortified that presumption by using the unambiguous words, “in lieu of dower.”
At the date of the will, and at the time of her husband’s decease, Christina Miller owned in fee simple a tract of eighty acres of land inherited from her father, which had become so incorporated Avith the home farm, that its identity Avas lost except on a careful survey. The testator therefore had devised to her a life estate in her own land, Avith a remainder to his grandson.
In November, 1850, on the day of the probate of the Avill, the AvidoAV appeared in court, and elected to take under the will the provision made for her in lieu of dower. Up to the time of her death, she remained in the use and occupation of the home farm, enjoyed the income from the trust fund, and continued for nearly twenty years after her election fully satisfied Avith all the terms and provisions of the Avill. It is obvious in view .of Avell-established legal principles, that the relation of the widoAV to the tract of eighty acres, Avas not the same after her election as it was before. By the devise and her election under the will, her estate in the premises was, Ave are of opinion, converted into a life estate with remainder to the grandson.
The doctrine of election, as stated by an approved text Avriter, requires, that if a testator has affected to dispose of property which is not his oavii, and has given a benefit to the person to whom that property belongs, the devisee or legatee accepting the benefit so given to him must make good the testator's attempted disposition; but, if on the contrary he chooses to enforce his proprietary rights against the testator’s disposition, equity will sequester the property *554 given to him', for the purpose of making satisfaction out of it to the person whom he has disappointed by the assertion of those rights. As said, too, by Welch, J., in Huston v. Cone, 24 Ohio St., 11: “It is a well-settled principle of equity, that where a will assumes to give to one of its beneficiaries property belonging to another person, for whom provision is likewise made in the will, the latter is bound to elect whether he will claim the property so disposed of, or take the provision made for him in the will; and that he cannot have both.” See also, White v. Brokaw, 14 Ohio St., 339; Jennings v. Jennings, 21 Id., 56. So firm is the principle that one cannot claim both under the will and adversely to it, that in disposing of that which is not his own, it seems to be immaterial whether the testator is acquainted with his want of title, or supposes that he is exercising a > power of disposition that belongs to him. Whistler v. Webster, 2 Ves., Jr., 370.
The obligation imposed upon a party to choose between two inconsistent claims, in cases where it is the clear intention of the testator from whom he derives one, that he should not enjoy the benefits of both, rests upon the soundest principles of equity. Indeed, the doctrine of election is the peculiar subject of the jurisdiction of courts of equity. It is a creature of equity, although regulated by statute as to the time, place, manner, requisites and effect of the election. One of the main objects of the statute is to remove the fact of the widow’s election from the domain of uncertainty; and that she may act deliberately and understandingly, she is allowed one year after the probate of the will, within which 'to make her election. But the doctrine of election is none the less of equitable origin because under statutory regulation.
It is no exception to the equitable rule which we have been considering, that the devisee or legatee is the widow of the testator. In Allen v. Getz, 2 Penn. R., 310, after stating the rule, that the devisee who accepts a devise under a will by which the testator has devised the estate of such devisee to another person, thereby elects to give up *555 all his right and title to such estate, the court says, that “ no reason can be assigned why the widow of the testator should be exempt from the operation of the rule. It is founded in great justice, for no one could well imagine that the testator would have devised or bequeathed such portion of his estate, even to his wife', if he had known that she would oppose his will in another part, by claiming and taking the part which he had thereby given to another.”
In the case of Tomlin v. Jayne, 14 B. Mon., 160, it was held, that although Tomlin had not ’the right of disposing by will of his wife’s interest in her father’s estate not reduced to possession, yet, as he did undertake to dispose of it by his will, in which he also gave his wife one half of his own personalty, a case was made for election by the wife. The wife, it was said, could not hold under the will what her husband had a right to dispose of, and at the same time hold independently of the will and against it, property which, although it was in fact hers and not her husband’s, he had expressly disposed of by his will.
In Cox v. Rogers, 77 Pa. St., 160, the testator provided, “ I do will to my son, his heirs and assigns, my farm, subject to my wife’s thirds.” The wife owned the farm. She accepted and retained a legacy of the personal property. It was held that she, and her. heirs after her death, were estopped from claiming the farm; and that the legal presumption was, that the wife knew that if she accepted the legacy, she would be estopped from claiming the farm as her own.
The principle is announced in Clay v. Hart, 7 Dana, 1, that where a testator devises a greater or other interest in his wife’s estate than he has, if she elects to abide by the will, her independent right to the property devised by it is thereby waived. In support of the same principle, see Reaves v. Garrett, 34 Ala., 558; Upshaw v. Upshaw, 2 Hen. & Mun., 381. These and other cases which might be cited are applications of the rule declared at an early date by Lord Chancellor Talbot, in Streatfield v. Streatfield (cases temp. Talbot, 176), “Where a man takes upon him to *556 devise what he has no power over, upon a supposition that his will will be acquiesced under, this court compels the devisee, if he will take advantage of the will, to take entirely, but not partially under it; there being a tacit condition annexed to all devises of this nature, that the devisee do not disturb the disposition which the devisor hath made.”
Our attention however is called to the case of. Carder v. Com’rs. of Fayette county, 16 Ohio St., 353, in which it is said by Welch, J., “that the election of the widow to take under the will does not estop her from contesting the will, denying the validity of its devises, or setting up her claims as heir.” It may be conceded that the right to contest a will because of its invalidity, or to set up a claim as heir to yaroperty not embraced in the will, should not be taken away by the widow’s election; and yet, it may be unreasonable that the widow, in a case like the one at bar,'after electing to take the provision made for her out of her husband’s estate, should be permitted to thwart the testator’s intention, and disappoint other persons by claiming property, though her own, which the testator had devised to them. As well remarked by Mc’Ilvaine, J., in Bowen v. Bowen, 34 Ohio St., 164, “whether or not any other interest or claim” (besides dower) “which a widow may have in, or against the estate of'her husband, is satisfied by provisions in her favor in his will, must be determined not by the rule of the statute, but upon principles of reason and right which exist entirely independent of the statute.”
Holding as we do, that the election of Christina Miller to take under the will of her husband, devolved upon her grandson a right in remainder in the eighty acres of land, we are led to inquire, whether that right was a legal or equitable one. In our view, he acquired an equitable interest. If a testator assumes to dispose of the property of his devisee in favor of a third person, it is obvious, that not being the owner, he cannot transfer the legal interest in the property. The testator, William Miller, Sr., had no power of. testamentary disposition .over the separate estate of his *557 wife. A devise by him of his wife’s property in express terms to his grandson, could not alone vest any interest. Without the supplementary act of the widow electing to take under the will, the devise to the grandson could not prove otherwise than nugatory. The rights which the grandson might acquire by virtue of the widow’s election, had their foundation in equitable principles. If there had been no statute regulating the widow’s election, the grandson, by virtue of Christina Miller’s election to accept the provision in lieu of dower, might have acquired the same property rights as upon a statutory election by the widow. The estate therefore of William Miller in the eighty acres depended not, under the will, primarily upon the operation of the statute, but upon the operation of equitable principles antecedent to the statute. By electing to take under the will, Christina Miller may have been equitably estopped from setting up her legal title as against her grandson, but, under the statute then in force, her election did not, we think, operate as a decree in chancery against her, for a conveyance to her grandson of the eighty acres, subject to her life estate.
But, while William Miller was entitled upon the death of his grandmother to an equitable estate in fee simple in the eighty acres in question, the insurance company, as mortgagee, stood in the position of a bona fide purchaser of the premises, for value, and without notice. It is conceded in the record that the company had no actual knowledge of the execution of the will of William Miller, Sr., or of the election of Christina Miller to take under the will, and we do not regard the company as chargeable with constructive notice of the grandson’s interest in remainder.
Doubtless, the probate of the will and the widow’s election to take under the same, were constructive notice to the company of the disposition of the testator’s estate, but not of the wife’s separate property. A purchaser from her of her land would not have been bound to take notice of a ■ deed of the same by another person, who was unauthorized to make the deed. The record or registry of a-deed is con *558 structive notice only to those who claim through or under the grantor by whom such deed was executed. Blake v. Graham, 6 Ohio St., 580; Leiby v. Wolf, 10 Ohio, 83. And the owners of land cannot with any color of reason or authority, be required to watch the records to determine whether some one has without right made conveyances of their lands. The rule, which would protect a purchaser against the operation of a deed of his grantor’s property made by a stranger without authority, is not, we conceive, inapplicable to the case of a testator’s assuming to devise property to which he has no title. In either case, the purchaser cannot be chargeable with constructive notice of the unauthorized act.
At the date of the execution of the mortgage to the company, Christina Miller was in the actual undisputed possession of the mortgaged premises. The fact was well known, that she derived title to the land by descent from her father, and by virtue of partition proceedings had between his heirs. The registry of deeds showed that the land was unincumbered. There was no suit pending against her, and no unsatisfied judgment or decree existed against her, affecting her title to the land. Assuming, that the probate of her husband’s will would have been constructive notice of his devise of her land to another, if the same had been identified as hers, the will, from its want of such identification, would not constitute constructive notice to any innocent purchaser. For the .purpose of constructive notice to the mortgagee, the proceeding for the probate of the will of William Miller, Sr., and the widow’s election thereunder, cannot be regarded as lis pendens, nor operate as a judgment or decree as to Christina Miller.
After her election to take under the will, in consideration of one dollar and love and affection, she executed a rvarranty deed of the eighty acres to Jacob Fisher, her brother. Fisher’s deed — of which the company had no actual knowledge when the mortgage to it was executed — was not placed on record for more than two years after its date, and more than one year after the execution and record of the mort *559 gage. Not having been recorded within six months, the deed was fraudulent as against the mortgage. The mortgage thus gained priority of the deed, and after condition broken, the title to the mortgaged premises, as between the parties, vested in the mortgagee. The mortgagee might then have maintained ejectment to recover possession of the premises. Heighway v. Pendleton, 15 Ohio, 785; Ely v. McGuire, 2 Id., 223; Allen v. Everly, 24 Ohio St., 97; Williams v. Englebrecht, 37 Id., 383.
The defendant in error being an innocent purchaser, for value, and without notice of William Miller’s equitable interest,, and its lien on'the mortgaged premises being first in order of priority, the judgment of the district court must be affirmed.

Judgment accordingly.