ANN ARTERBURN, ET AL. *v.* W. C. ARTERBURN, ET AL.

[Abstract Kentucky Law Reporter, Vol. 6—740.]

**Election of Widow to Take Under Husband's Will.**

Where the wife has a life estate in real estate and is also the beneficiary under a life insurance policy on his life and the husband makes a will by which he makes provision for his wife and also disposes of her real estate and insurance policy, and the wife after his death makes no objection to the will but undertakes to carry it out, conveying her real estate, devised by her late husband to the executors, and signs over her rights in the life policy and accepts the property given her by the will, and the real estate is partitioned and deeded to the children and the estate settled, and several years afterwards she undertakes to renounce the will and recover her property, she will be estopped by her conduct.

APPEAL FROM LOUISVILLE CHANCERY COURT.

April 30, 1885.

OPINION BY JUDGE PRYOR:

Arterburn, the husband of appellant, died in April, 1878, leaving a last will that was admitted to probate a few weeks after his death.

In disposing of his estate he devised certain land that belonged to his wife for life, and an insurance policy amounting to $11,000 that had been taken on his life for the wife's benefit, to his children.

He gave to his wife in her absolute right personal property of the value of $3,500, and directed his executors to invest the $11,000 insurance policy and the amount of an additional policy of $10,000 in some security for the benefit of his wife during life and at her death the principal fund to be distributed between his children.

In about three years after the probate of the will, the widow (appellant) becoming dissatisfied with the provision made for her by her husband, instituted this action, in which she claims that her husband had no right to dispose of her property, and asserts her right to make an equitable election by which she can renounce the provision of the will and claim at least her own estate. Her right to do so is based upon the fact that she was ignorant of the contents of the will or not in the possession of such facts at the time the will was probated and for years after as would have enabled her to make an intelligent election in reference to her rights as widow. The fact that the home farm devised by the husband belonged to her for life is conceded and that the policy for $11,000 was for her benefit and did not belong to the estate is not controverted and it seems to us that the only question presented is: Has the widow elected to take under the will and if so is she now estopped from asserting this claim to her own estate?

It is evident from the 8th clause of the testator's will that the husband knew that his wife owned in her own right, during life, the home farm and that the remainder interest belonged to the children.

He had purchased land adjoining this home place and desired it all to be considered as "our farm," for the reason as suggested by him, that if taken separately, the value of such tract would be much lessened. He wanted the land sold or rather divided between his children and knowing the nature of his wife's interest, required that his children co-operate with his executors and his wife, and in the

division to treat their mother's land as a part of the testator's estate so as to enable them to execute his wish without trouble. The real estate was divided between the children, the widow conveying her interest, all with a view no doubt of executing to the letter the wishes of the testator.

The insurance money was collected by the executors with the widow's consent and the moneys from both policies invested for her benefit.

The personalty devised to her under the will, she accepted from the executors and when this action was instituted the entire estate had been divided and settled in accordance with the provisions of the testator's will. It seems to us that all the requirements essential to an intelligent election on the part of the widow have been made manifest by the facts of the record. It is evident that she knew that she was the tenant for life in the home farm and equally as much so that she was the owner of the proceeds of the policy for the $11,000. It is unreasonable to suppose that the executors who were men of intelligence and interested as much for the widow as for the estate, would have failed to inform her or themselves as to the nature or character, and title to the property devised, so that the children might obtain the mother's estate without her knowledge and consent and the more unreasonable that the widow should surrender her own estate under the circumstances, unless she desired to see fully executed the last will of her husband.

The appellant was a woman of more than ordinary intelligence; was surrounded by friends and advised by able and prudent counsel.

The attorney for the executors was also the attorney for the widow, and when sent for by her, he supposed that it was with reference to a renunciation by her of the provisions of the will made for her by her husband. His interview soon convinced him that she had no idea of interfering in any way with that instrument. He knew the character of the estate that had been devised to the widow as well as to the estate of the wife that had been devised by the husband, and was ready to proffer her any advice that was proper by reason of his relation to the estate.

The widow had in fact been fully informed as to her rights shortly after the will was executed. Her son-in-law, Hoskins, who had consulted counsel, made a full and complete statement to her of her

rights as widow, and while he may be interested for his children in the present controversy, there is no reason for discrediting his testimony and particularly when the appellant does not pretend to contradict him.

Her determination to abide by the will is clearly established and the fact inferred from the entire testimony is that there must have been a mutual understanding between herself and husband as to the manner in which the estate, including the land of the wife, should be disposed of.

In October, 1880, she conveyed her land to the executors so that they might execute the will of her husband. The deed so recites upon its face. This land was then divided among the children, deeds of partition made and the estate settled up. She had made up her mind to take under the will and has held in no other way. The personal estate and the income from $20,000 insurance money furnished her an ample support, and while this would be no argument against her right to the possession of her own property if asserted within a proper time, her own conduct and action estops her now from disturbing the division of the estate made between the children.

In the case of *Dawson v. Hays,* 1 Met. 460, the husband devised the wife's land and at the same time devised to her certain slaves. She was to hold both the land and slaves for life, and at her death to pass to the remaindermen. The wife after retaining the possession of the land and slaves under the will undertook to devise the land. It was held as she elected to take under the will she had no power to dispose of the land. In the case of *Tomlin v. Jayne* reported in 14 B. Mon. 130, it was held that when the husband did undertake to devise his wife's estate and at the same time made a devise to the wife, it presented a case for an election on the part of the widow to take under or against the will.

The mere failure to renounce the provisions of the will may not and should not be sufficient to show an election on the part of the widow. Still when after advice given and full knowledge of her rights she aids in the execution of the will and disposes by deed of her own estate that the will may be executed, and receives what is devised to her, it seems to us that such facts are conclusive against her and that no rule of equity would now allow an election on the part of appellant or award her compensation for the value of her

estate that she has knowingly and willingly consented shall become a part of her husband's estate.

The testimony by the widow and executor is by no means convincing that the appellant was in ignorance of her rights or the steps necessary to secure them, and when considering all the proof heard on the subject there is no room to question the capacity of Mrs. Arterburn to make an intelligent election, and that she was in possession of all the facts to enable her to do so at the probate of the will, and afterwards is clearly shown, she held under the will in accordance with a fixed purpose that was not changed for years after its probate. It is now too late to ask the relief she desires.

Judgment *affirmed.*

*A. P. Humphrey, Russell & Helm,* for appellant.

*Elliot Hemingray, Muir & Heyman,* for appellee.