### ‐ SHARP and others *vs.* PRATT.

Where a *tenant in common* commences a suit for the *partition* of lands held in common, stating in the bill his own right and title to an undivided portion, and that the owners of the residue are *unknown* to him, and proceedings are had in conformity to the provisions of the statute calling upon the *unknown owners* to appear and answer, and the bill is taken against them as confessed, and partition is made and confirmed, assigning to the plaintiff a certain portion of the lands to be held by him *in severalty*, the owners of the residue are *barred* by such partition from maintaining an action for the recovery of any part of the lands so allotted to the plaintiff in the partition suit, if such plaintiff in truth had such right and title as set forth in his bill.

But if on such partition the share of the *unknown owners* be allotted to an intruder in the partition suit, who in fact had no title to the land, although in the partition suit it be adjudged that he has title, the decree or judgment in partition is no bar to an action by the *true owners* for the recovery of the lands allotted to him.

Where *executors* are authorized, by the last will and testament by which they are appointed, to *sell the real estate* of the tastator, and one or more of the executors neglect or refuse to take upon themselves the execution of the will, a sale by the residue of the executors, who do take upon themselves its execution, is equally valid as if all had joined.

THIS was an action of *ejectment*, tried at the Greene circuit, in April, 1834, before the Hon. JAMES VANDERPOEL, one of the circuit judges.

The plaintiffs showed title in themselves to an equal undivided *one-sixth* part of a lot known as No. 43, in great lot No. 20, of the Hardenbergh patent. One fourth of the title of the plaintiffs was under a deed given by *two executors* of the last will and testament of Nicholas Kiersted, executed 13th May, 1795. Kiersted, by his will, appointed *four executors*, and authorized them to sell his real estate, which he had devised to his children. It was proved that the two executors who conveyed the property were the *sole acting executors* under the will, and that the other two had not taken upon themselves the execution of it; there was no evidence, how-

ever, of their *renunciation*. The defendants objected to this deed being received in evidence ; which objection was overruled. The defendant was shown to be in possession of part of lot No. 43, and the plaintiffs conceded that he was so in possession as the *tenant* of George Clarke, who, the plaintiffs admitted, had title to *four-fifths* of the lot. Here the plaintiffs rested. The defendant then produced in evidence exemplifications of proceedings in chancery, from which it appeared, that in January, 1828, a bill in chancery was filed by George Clarke to obtain partition of lot No. 43, in which he stated that he was the owner in fee of *four-fifths* of the lot ; that one *John Brandow* claimed possession of a part of it, but of what part thereof he was wholly ignorant ; and that it was unknown to him who was or were the owner or owners of the remaining one-fifth of the lot. *Brandow* put in an answer to the bill, and an order was made that the *unknown owners* should appear and answer within four months, or that in default thereof the bill be taken as confessed—a copy of the order being directed to be published in public newspapers printed in Albany and New-York. Subsequently, on showing a publication of the order and that the unknown owners had not appeared, the bill was ordered to be taken as confessed, and such further proceedings were had, that commissioners were appointed to make partition ; there was a reference to a *master* to report upon the title, who reported that Clarke was seized of *four-fifths* of the lot, and Brandow of the remaining one-fifth. Whereupon commissioners were appointed to make partition, who made division of the same between Clarke and Brandow, according to their respective rights as reported by the master, and made report of such partition, which, on the 24th March, 1829, was *confirmed* by the chancellor, and a decree made that the partition remain firm and effectual forever. After the production of this evidence, the counsel for the defendant insisted that, by the partition thus made, the plaintiffs were barred in law from maintaining their action. The judge charged the jury that the plaintiffs were not barred, and were entitled to recover an equal undivided sixth part of the lot. The defendant's coun-

sel excepted. The jury found for the plaintiffs. The de
fendant moves for a new trial.

*M. T. Reynolds*, for the defendant.

*L. Elmendorf*, for the plaintiffs.

PER CURIAM. The questions now presented are of course
the same as those decided by the circuit judge, and which
were excepted to by the defendant's counsel, who now insists,
first, that the deed from the *two executors* was invalid, the *re-
nunciation* of the other two not having been shown ; and,
second, that the plaintiffs are barred from a recovery in conse-
quence of *Clarke's* owning *in severalty* by force of the decree
in the partition suit. Both these questions depend upon the
*statutes*. As to the first, it is enacted by the 11th section of
the act *concerning wills*, 1 *R. L.* 366, § 11, that where any
lands, &c. have been or shall be devised, by any last will and
testament, to the executors to be sold, or shall be thereby or-
dered to be sold by such executors or any of them, and after
the death of the testator part of the executors so named *re-
fuse* or *neglect* to take upon them the execution of the will,
then all sales of the said lands, by the executor or executors
who take charge of the administration of the said will, shall
be equally valid as if the residue of the executors had joined
in the sale ; which is re-enacted, 2 *R. S.* 109, § 55. The
common law rule is, that if a man devise that his executors
shall sell his lands, this gives but a naked authority ; and as
the authority is to all jointly, all must join in the sale ; and if
one die, it being a bare authority, it cannot survive to the rest.
*Co. Litt.* 112, *b.* 113, *a.* 181, *b.* The statute intended to
depart from the rule of the common law, by declaring that
when the power is given to several executors to sell the
land, it may be executed by such as take charge of the ad-
ministration, if the others *refuse* or *neglect* to take upon them-
selves the execution of the will. The defendant's counsel
contends that, to authorize a less number than the whole to
execute the power, there should be a *renunciation* from the
others. The phraseology of the statute will justify a more

liberal construction. It is not necessary that there should be a *refusal* to serve; a *neglect* answers the same purpose, and confers the authority upon those who act. It was sufficient, therefore, in this case, to show that the two executors who did not join in the deed, *neglected to take upon them the execution of the will.* The testimony clearly showed such neglect. The deed therefore was equally efficacious to transfer the title of the testator, as if it had been executed by all the executors named in the will. In this respect the statute makes no distinction between a *devise to sell* and a *bare authority.*

As to the second point: The act for the *partition of lands*, 1 *R. L.* 1813, *p.* 507, directs the proceedings to effect a partition between parties which are known and those which are unknown. In the present case Mr. Clarke proceeded, stating that Brandow claimed some portion of the premises, and that there were owners unknown. Notice was accordingly given, according to the statute, to unknown owners; and, upon the examination before the master, it appeared that Clarke was the owner of four-fifths. As to the interest of John Brandow, the master states that the deeds under which he claimed were by way of lease and release from Albertus Becker and wife and Alexander Boyd and wife, dated in March, 1799—that they were each for one-sixth of one-half; but it was proved that Brandow had been in possession 29 years of one-fifth, claiming title thereto; from which the master was of opinion that Brandow was seized of one-fifth. The third section of the act directs the proceedings in cases against persons known and unknown, and makes it the duty of the court in which proceedings for partition are prosecuted, to ascertain and determine the respective rights of the parties, and give judgment that partition be made according thereto, or between such of them as shall have any right therein. At the conclusion of this section is found the following proviso: "Provided always, that such partition shall not preclude any person not named therein, and who shall claim any right or title to the premises in question, from controverting the title or interest of the parties between whom such partition shall have been made." As the parties, plaintiffs in this suit, were not named in the proceedings in partition, they are at liberty to

controvert the title of either or both the parties who are named in the partition. On the trial, the plaintiffs admitted that George Clarke, the lessor of the defendant for the premises in his possession, had the title to four-fifths of lot No. 43, in great lot No. 20, in the Hardenbergh patent. It is not expressly stated or proved in the case, that the premises in possession of the defendant were assigned upon the partition to George Clarke in severalty; but this admission must, we think, be understood as containing that fact, and the further fact that the defendant held by virtue of a lease from Clarke. The question then arises, not whether the original title of the parties can be controverted by a party not named in the partition, but whether the partition itself can be overhauled and broken up, as against the persons whose title and quantum of interest are admitted. If that can be done, the partition amounts to nothing. The statute, we think, repels such an idea. The 3d section, before quoted, states that if it shall not appear to the court what interest any parties who have not appeared have in the premises, then judgment shall be given that partition be made, so far as the rights of the parties who are known have been ascertained; and the residue of the premises shall remain for the parties unknown, subject to be divided between them, according to the statute or by consent, at any future time. The partition, however, so far as it has been made, must remain effectual. *Clarke* was the owner, as is admitted, of *four-fifths*. He has had four-fifths of the tract assigned to him in severalty, and the premises now claimed are a part of the premises so assigned to him; they cannot be recovered but by controverting his title. So long as his title is admitted, the partition as to him cannot be disturbed. If the plaintiffs intend to controvert the title of *Brandow*, they must bring their suit against the person or persons in possession of the premises assigned by the partition to him. In the partition suit, title was shown to the whole of the premises; of course nothing was left for owners unknown. The plaintiffs, therefore, cannot obtain any part of the premises, but by attacking the title of one or both the persons between whom partition was made. If they concede the title of Clarke, they cannot recover any part of the premises assigned to him. He has no

more than, by their own admission, he is entitled to; and to subvert the partition already made, would destroy the benefit of the statute and defeat its policy. The defendant, in occupying the premises for which this suit is brought, is the tenant of Clarke. The plaintiffs can no more recover against him for these premises, than they could against Clarke if he were in possession. On this point we think the circuit judge erred; and a new trial should be granted—costs to abide the event.