Roseboom *v.* Mosher.

---

## ROSEBOOM *vs.* MOSHER.

An assignment by a debtor pursuant to an insolvent act of *all his estate, real and personal,* passes the title to all the lands which he owns, without further description.

Lands owned by him, *though not mentioned in his inventory,* pass by such assignment.

A reconveyance by the trustees will not be presumed, or their title be held to be extinguished, on account of the lapse of time without the assertion of a title under the assignment, where there is no proof that the debts of the insolvent have been paid.

Where a power is given by will to executors to sell lands in case of a deficiency of personal assets to pay debts and legacies, and no *estate* is devised to the executors, it seems that the purchaser, to sustain his title, must shew the fact of such deficiency. *Per* BRONSON, Ch. J.

But where by the terms of the power the executors are to sell, if in *their opinion* it shall become necessary for the purpose of paying debts and legacies, the necessity need not be shewn, the conveyance being conclusive.

The neglect or refusal of one of several executors to take upon himself the execution of a will need not be in writing, or by matter of record, in order to enable the others to execute a conveyance pursuant to a power in the will to all the executors to sell real estate.

Nor is it essential that the executor who does not join in a conveyance should have formally renounced, or have refused after a citation for that purpose to take the administration.

*It seems*, that any evidence legitimately tending to establish the fact of such neglect or refusal, is competent.

Where two executors named in a will were directed by it to sell a particular parcel of land to an individual named for a specified price, and to sell the other real estate of the testator if deemed necessary to pay debts, &c. and both joined in the conveyance of the particular parcel, and afterwards one of them alone sold and conveyed other lands of the testator; *held*, that the purchaser of the last mentioned land was not precluded from shewing that the executor who did not join in the conveyance had refused and neglected to execute the will after joining in the first mentioned conveyance.

The fact of joining in the conveyance is strong though not conclusive evidence that all the executors who so joined had taken upon themselves the general execution of the will.

EJECTMENT, tried at the Albany circuit in February, 1844, before CUSHMAN, C. Judge. The action was brought to recover an undivided third part of a farm containing about 150 acres of land in New Scotland, Albany county. In the year 1797, Jacob Roseboom died seized of the premises in question, and other lands, having first made and published his last will, by which he devised, among other things, as follows:—"*Item:* I give and bequeath all my estate, real and personal, to my beloved wife Hester, for and during the time that she remains my widow. And I hereby charge her with the maintenance and education of my children during the time that she enjoys my said estate. *Item:* I hereby empower and enjoin it upon my executor and executrix hereinafter named, to sell and convey unto Elisha Crane, his heirs and assigns, my house and lot of land which he now occupies, situate in the first ward of the city of Albany, for the consideration of twelve hundred pounds, to be paid in such manner as my said executor and executrix shall deem proper. *Item:* In case it shall in the opinion of my said executor and executrix become necessary to grant, bargain and sell any part of my real estate besides the said house and lot of ground occupied by said Elisha Crane, either for the payment of my debts or the support and maintenance of my said wife and children, I hereby authorize and require my said executor and executrix

to grant, bargain, sell and convey so much of my said real estate as they shall from time to time to be necessary for that purpose. *Item :* I give, devise and bequeath all the residue and remainder of my estate, both real and personal, to my four children, Harriet, Gerritt, John and Magdalena. To have and to hold the same to them, their heirs and assigns forever as tenants in common. *Lastly :* I nominate, constitute and appoint my beloved wife Hester and my friend Abraham Van Vechten to be executrix and executor of this my last will and testament: hereby revoking all other wills by me heretofore in any wise made."

The testator's wife survived him, and died in the year 1826. The testator left four children, three of whom, Harriet, the plaintiff, and John, are still living ; and Magdalena, who died in 1837, unmarried and without issue.

The widow and Abraham Van Vechten the executor named in the will, by their deed bearing date the 31st of August, 1797, conveyed the house and lot of ground in the city of Albany mentioned in the will to Elisha Crane in fee, for the consideration, as mentioned in the deed, of $3000 "to the said Hester Roseboom in hand paid." The deed recited the will as the authority to sell. There were covenants by Mrs. Roseboom solely for quiet enjoyment, and further assurance.

On the 17th of January, 1805, the executrix, Hester Roseboom, conveyed a farm of 242 acres, including the premises in question, to John Palmatier in fee for the consideration of $3000. On the 2d of May, 1808, Palmatier conveyed the same land in fee to William Sager for the consideration of $5000. On the first of April, 1840, Sager conveyed the 150 acres in question to the *defendant* in fee for the consideration of $11,500.

The plaintiff read in evidence the deposition of David Sager, who swore that when William Sager was about to purchase of Palmatier he went to Abraham Van Vechten, the executor named in the will, who then lived in Albany, but who has since died, to make inquiries about the title. He asked Mr. Van Vechten, as the witness stated, whether Mrs. Roseboom had by the will of her husband the right to convey the Palmatier farm,

and whether she could give a good title to it. Van Vech-ten replied that she had the right, and that she had given a good title for the farm to said Palmatier; and that Sager could buy with perfect safety: that by the will it was made to her, and she had the right to convey the fee.

In 1811 the plaintiff applied for and obtained the benefit of the insolvent law of that year. In the course of that proceed-ing he made an assignment of " all his estate, real and personal, both in law and equity, in possession, reversion and remainder." In the inventory of his property accompanying the petition for a discharge, he mentioned a five acre lot of land in Amsterdam; but made no mention of the lands in question in this suit. In 1822 the plaintiff cited Mrs. Roseboom to account before the surrogate as the sole acting executrix of the will, alleging in his petition that she had received moneys the produce as well of the real, as the personal estate of the testator. It was proved, that on search of the surrogate's office of the county of Albany no act or proceeding of said Van Vechten as executor of Roseboom could be found.

The plaintiff requested the judge to charge the jury, that the insolvent assignment made by the plaintiff did not convey the premises in question on account of the generality of the terms used to describe the same; but if it did, that the jury might presume from the lapse of time and the possession taken and continued un-der title derived from the executrix, that the title of the assignees had been extinguished by the payment of the debts of the in-solvent debtor. He requested him also to charge, that the fact that Mr. Van Vechten had united with Mrs. Roseboom in the conveyance to Crane, was conclusive evidence that he had ac-cepted the trust and taken upon himself the execution of the will; that the refusal or neglect of Mr. Van Vechten to execute the will must be evidenced by some writing or matter of record, and could not rest in parol; and also that it was incumbent on the defendant, in order to sustain the title conveyed by the execu-trix, to shew that a sale of the premises was necessary for the payment of debts or the support of the testator's wife and chil-dren.

Roseboom *v.* Mosher.

The judge charged the jury that proof of the necessity of the sale for the objects mentioned was not required, it being sufficient if the executrix *was of opinion* that such necessity existed; that the fact that Mr. Van Vechten had united with the widow in the deed to Crane was a strong circumstance and entitled to great consideration in passing upon the question whether he had neglected or refused to take upon himself the execution of the will, but it was not conclusive, as he might subsequently have renounced and refused to execute the tiust; but that such renunciation or refusal, to be effectual, must have been in writing; and he left it to the jury, under all the evidence, whether they were satisfied that he had so renounced or refused, advising them that the declarations of Mr. Van Vechten which had been proved were material evidence upon that question, especially on account of his professional eminence as a lawyer and known integrity of character; that the lapse of time ought to be taken into consideration, and they might be satisfied with less proof than that which would be required to establish a recent transaction; that a re-assignment by the trustees to whom the plaintiff had assigned his property under the insolvent act, could not be presumed in the absence of any proof to that effect. He instructed them that in case they should find that Mr. Van Vechten had not in writing renounced or refused to act as executor, the plaintiff would be entitled to recover an undivided twelfth of the premises as the heir at law of his sister Magdalena; but if he had so renounced or refused the defendant would be entitled to their verdict; and he declined to charge otherwise than as above stated upon the propositions submitted on behalf of the plaintiff. The plaintiff's counsel excepted to the refusal to charge as requested, and to the several propositions adverse to him contained in the charge actually given.

The jury found a verdict for the defendant. The plaintiff moves for a new trial on a case, with liberty to turn the same into a bill of exceptions.

*J. L. Wendell,* for the plaintiff. (1) The executor and executrix having no estate, but only a naked power, the defendant

was bound to shew that the *necessity* mentioned in the will had occurred, in order to sustain the deed of the executrix (*Sugden on Vend.* 449, *ed.* 1807; *Dike* v. *Ricks, Cro. Car* 335; 3 *Preston's Abr.* 265; *Powell on Devises,* 292; 3 *Co Inst.* § 504, *Butler's note, No.* 249, *sub.* 12; *Sharp* v. *Speir,* 4 *Hill,* 76.) (2) The language in the will respecting the *opinion* of the executor and executrix does not change the rule. (*North River Bank* v. *Aymar,* 3 *Hill,* 272; 2 *Dwar. on Stat.* 689; *Popham* v. *Hobart,* 1 *Chan. Cas.* 280.) (3) The power being to two, could not be executed by one unless the other had renounced the execution of the will. (2 *Preston's Abr.* 250; *Stat.* 21 *Hen.* 8, *ch.* 4; 1 *R. L.* (1813) 366, § 11; 2 *R. S.* 109, § 55.) (4) The judge erred in the effect given by him to the declarations proved to have been made by Mr. Van Vechten. (1 *Phil. Ev.* 284; *Roe* v. *Ferrars,* 2 *Bos. & Pul.* 542; 2 *Stark Ev. pl.* 4, 1252; *Otsego* v. *Smithfield,* 6 *Cowen,* 760; *Jackson* v. *Schauber,* 7 *id.* 187.) (5) He erred in his instructions as to the effect of the lapse of time upon the defendant's evidence. (*The Mayor of Hull* v. *Horner, Cowp.* 102, 110; *Harris* v. *Wilson,* 1 *Wend.* 511; *Hollister* v. *Johnson,* 4 *id.* 639.) (6) He ought to have charged as he was requested to do, that the execution of the deed to Crane was conclusive evidence that Mr. Van Vechten had taken upon himself the execution of the will. (2 *Stark. Ev.* 1252.) (7) The assignment executed by the plaintiff as an insolvent debtor was insufficient to transfer the title to any land, on account of the generality of the terms of the description. (6 *Webster's Laws N. Y.* 200; *Duncan* v. *Duboys,* 3 *John. Cas.* 125.) (8) The jury should have been permitted to presume that the estate of the assignees was extinguished. (*Jackson* v. *Davis,* 5 *Cowen,* 123; *Doe* v. *Sybourn,* 7 *T. R.* 2.) (9) The defendant was not entitled to avail himself of the estate of the assignees, especially as he had not connected himself with that title. (*Jackson* v. *Hudson,* 3 *John.* 375; *Same* v. *Harder,* 4 *id.* 202; *Same* v. *Todd,* 6 *id.* 257; *Collins* v. *Torry,* 7 *id.* 278; *Jackson* v. *Pratt,* 10 *id.* 381; *Knox* v. *Jenks,* 7 *Mass. R.* 488; *Coxe's Dig.* 272, *pl.* 41; 1 *T. R.* 758; 3 *Wheat.* 224, *note* (*a*); *Jackson* v. *Morse,* 16 *John.* 197.)

*R. W. Peckham,* for the defendant, cited *Bac. Abr. Executors and Administrators, E.* 9, *vol.* 2, 405; *Perkins' Conv.* 238, § 545; *Bonifaut* v. *Greenfield, Cro. Eliz.* 80; *Townson* v. *Tickell,* 3 *Barn. & Ald.* 31; 1 *Dev. & Batt.* 389; *Jackson* v. *Ferris,* 15 *John.* 346; *Judson* v. *Gibbons,* 5 *Wend.* 224; *Hartwell* v. *Root,* 19 *John.* 345; *Adair* v. *Lott,* 3 *Hill,* 182; 1 *Powell on Dev.* 233, 238; 1 *Sug. on Pow.* 172; *Franklin* v. *Osgood,* 14 *John.* 527; 1 *Williams' Ex'rs,* 150; *Williams* v. *Wood,* 14 *Wend.* 126; *Rich* v. *Rich,* 16 *id.* 663; *Fitzgerald* v. *Alexander,* 19 *id.* 402; 6 *Hill,* 296, *note b.*)

*By the Court,* BRONSON, Ch. J.   The plaintiff claims an undivided fourth part of the property as one of the devisees of his father Jacob Roseboom; and he claims an undivided twelfth part as one of the heirs at law of his sister Magdalena, who died in 1837.   The defence is, that the title to the whole of the property passed by the deed of Mrs. Roseboom, the executrix, to Palmatier in 1805.   In addition to this, the defendant relies on the assignment which the plaintiff made as an insolvent debtor in 1811, as an answer to the action so far as the plaintiff claims as devisee under the will of his father.

We will first notice the plaintiff's proceedings as an insolvent debtor.   Although the assignment was as general in its terms as the law under which it was made, (6 *Web.* 200,) I see no reason to doubt that it passed all the property which the plaintiff then owned, whether in possession or expectancy.   If at that time he deemed himself the owner of this property, the omission to mention it in the inventory proves that he intended to defraud his creditors.   But that wrong would not prevent the title from passing to the assignees for the benefit of creditors.   The assignment is not confined, either in its terms or by the law under which it was made, to the property mentioned in the inventory. The language is broad enough to reach the whole of the debtor's estate of all kinds; and there is no ground, either in morals or public policy, for restricting its influence to narrower limits.

Had it been proved that all of the debts had been paid, without a sale of this property, there would then have been

some ground for presuming that the assignees had re-conveyed to the plaintiff. But the mere lapse of time since the plaintiff parted with his title lays no foundation for such a presumption. And if the estate of the assignees might determine without a re-conveyance, that could only happen when the object for which the assignment was made had been accomplished; and there is no proof in the case that the debts have been paid. We can, therefore, neither presume a re-conveyance, nor say that the title of the assignees has been extinguished.

Although the defendant does not make title under the assignees, there is nothing in the case to preclude him from showing that the plaintiff has parted with all his interest in the property. The defendant did not enter under the plaintiff, nor under his title; nor is he an intruder into lands which were once in the possession of the plaintiff. The plaintiff was never in possession. The defendant entered and holds as owner; and there is no reason why he should not be allowed to defend, if he can, on the general doctrine that in ejectment the plaintiff can only succeed upon the strength of his own title.

This disposes of the case so far as the plaintiff claims as one of the devisees in his father's will. But his claim to a twelfth part of the property as heir at law to his sister Magdalena, who died after the insolvent proceedings, makes it necessary to enquire whether the title passed by the deed of Mrs. Roseboom to Palmatier.

When no estate is devised to the executors, and they have a mere power to sell lands in case the personal estate shall not prove sufficient to pay debts and legacies, there it may be that the purchaser must show a deficiency in the personal property, and so that a sale was in fact necessary. (*Dike v. Ricks, Cro. Car.* 335; *W. Jones*, 327, *S. C.*; *Sugd. Vend.* 449, *5th Lond. ed.; Butler's note* 249, *Sec.* 12 *to Co. Litt.*) But here the executors were authorized to sell if *in their opinion* it should become necessary to do so for the payment of debts, or the support of the wife and children. The power to sell did not depend upon an actual necessity, but upon the opinion of the executors concerning the necessity; and in such a case I cannot think

that the purchaser is bound to show a deficiency in the personal estate. No fraud is alleged; and if the executrix has erred in judgment upon a question which the testator referred to her decision, that cannot defeat the title of the purchaser.

At the common law it was necessary to the due execution of such a power as this, that all of the executors should join in making the sale. But the statute of 21 *Hen.* 8, *ch.* 4, provided, that where part of the executors do refuse to take upon him or them the administration and charge of the will, a sale by those who do accept and take upon them the care and charge of the will shall be as good and effectual in the law as though all of the executors had joined. Although this statute in its letter only extended to a case where the executors had a power to sell, yet being regarded a beneficial law, it was extended by construction to the case of lands devised to executors to be sold. (*Co. Litt.* 113, *a.*) Our statute extends in terms to both classes of cases; and it provides also for the *neglect,* as well as the refusal, of one or more of the executors to take upon them the execution of the will. (1 *Kent & Rad.* 180, § 11.) If Mr. Van Vechten had renounced before the surrogate, or if, being cited, he had neglected to appear and take upon himself the execution of the will, and his default had been recorded by the surrogate, there would then have been no difficulty in the case. But is there no other way in which it may be shewn that he refused or neglected to act as an executor? In England that seems to be an open question. I do not find that it has been decided either one way or the other. In *Bonifaut* v. *Greenfield,* (*Cro. Eliz.* 80, 1 *Leon.* 60, *S. C.*) it does not appear how the executor refused. Croke says, " one of the four [executors] refuses to meddle with the will or sale ;" and Leonard has it, that " one of the executors refused administration of the will." It has been said, however, that he had not renounced " either by matter of record or by deed." (*Per Holroyd, J. in Townson* v. *Tickell,* 3 *Barn. & Ald.* 31.) We have held that it was enough to show, that the executor who did not join in the sale had *neglected* to take upon him the execution of the will; and that this may be proved although there was no renunciation. (*Sharp* v. *Pratt,* 15 *Wend.*

610. *And see Jackson* v. *Ferris,* 15 *John.* 346.) And it has been held by two highly respectable courts in sister states that the refusal need not be by deed, nor by matter of record; but that it may be proved, like other matters *in pais,* by any evidence which has a legal tendency to establish the fact. Presumptions may be indulged; and the declarations of the executor who did not join in the sale may be given in evidence. (*Geddy* v. *Butler,* 3 *Munf.* 345; *Nelson* v. *Carrington,* 4 *id.* 332; *Den* v. *Sparks,* 1 *Dev. & Bat.* 389.) These cases were decided on the 21 *Hen.* 8, *ch.* 4, which only provides for a *refusal* of the executor to take upon him the administration and charge of the will; and it was held that the mere omission of the executor for a considerable period to qualify and enter upon his trust was sufficient *prima facie* evidence of the refusal. Our statute provides for the *neglect,* as well as the refusal, of one of the executors to act, which makes the case still stronger for receiving every species of common law evidence. Had the question been entirely new, I should have been inclined to the opinion that a formal renunciation by the executor, or a neglect to take upon himself the administration of the will when cited for that purpose was necessary to bring the case within the statute. But the question has been settled the other way. The judge was wrong, therefore, in telling the jury that there must be a renunciation or refusal in writing. But that was an error in the plaintiff's favor, and of course he cannot complain.

It is no objection to this evidence that it touches the title to real property. Although the title to lands cannot be passed by parol, there are many cases where collateral facts affecting the title may be proved by unwritten evidence. It is so when a deed is impeached for fraud in the execution, or on the ground that it is a fraud upon creditors. When the validity of a deed depends on the heirship of the grantor, the kindred, and the death of the ancestor, may be proved by oral evidence. And if the question be whether the grantor has survived the other donees of a power to sell, the fact that the other donees are dead may be proved in the same way. These are plain cases about which no doubt can be entertained. The case in hand

seems to be equally clear.   If you may prove by oral evidence the survivorship of the grantor, I see no reason why you may not show in the same way that he is the only acting executor: or, if parol proof may be received to show that one of the donees of a power is dead, it must also be admissible to show that he has refused or neglected to assume the trust.   You may not prove a conveyance of lands by parol ; but collateral facts may be proved in that way, although they may either overthrow, or be necessary to give effect and operation to the deed.

As the plaintiff himself gave in evidence the declarations of Mr. Van Vechten, it is not necessary to inquire whether they would have been admissible if offered by the other party.   And as to the comments which the judge made upon the weight and importance of the evidence, it is sufficient to say, that such comments, unless they amount to a misdirection in point of law, do not furnish a sufficient ground for ordering a new trial.

Immediately after the testator's death in 1797, Mr. Van Vechten united with Mrs. Roseboom in executing one of the powers conferred on the executors by the will.   They conveyed to Crane.   Although this is but a single act, it undoubtedly furnishes very strong evidence that he had taken upon himself the general execution of the will.   But I do not see that it is conclusive proof of that fact.   It is quite possible that the signing of that deed is the only thing which he ever did as executor.   It is true that when we find him once acting as executor, the presumption is that he continued to act.   But this is not a conclusive presumption.   It may be met and overcome by other evidence.   And there are several facts in the case which tend strongly to the conclusion that he did not take upon himself the general execution of the will.   He never proved it, nor qualified as executor ; nor is there any other trace in the surrogate's office of his ever having acted as executor.   In the deed to Crane, instead of the usual acknowledgement that the consideration money was paid to the grantors, it is carefully stated that the money was paid to Mrs. Roseboom.   This fact goes to show, that while Mr. Van Vechten consented to sign a deed for the execution of this particular power, he did not intend to

assume the general administration of the will. There is no proof that he ever acted after giving the deed to Crane, which was more than seven years before the executrix conveyed to Palmatier. And finally, the plaintiff has himself borne testimony to the fact, that Mr. Van Vechten refused or neglected to execute the will. In 1822 he cited his mother to account before the surrogate as the sole acting executrix, alleging that she had received moneys from the real as well as the personal estate. It may be added, that his insolvent proceedings in 1811 furnish a pretty strong implication against the present claim. By omitting to mention this property in the inventory of his estate he declared, and that too under oath, that he had no interest in this land. These are some of the facts which bear upon the question whether Mr. Van Vechten had refused or neglected to take upon himself the execution of the will; and if it was proper to leave that question to the jury, as I think it was, it is quite clear that we cannot disturb the verdict on the ground that it is against the weight of evidence.

The case, as the jury must have found the facts, comes to this: Mr. Van Vechten did one act as executor, and then, and always afterwards, refused to take another step. The executrix went on alone, and after more than seven years had elapsed she conveyed to Palmatier. I think, though not without some doubt, that this refusal brought the case within the meaning of the statute, and that the power was well executed by Mrs. Roseboom alone.

After the judge had laid down the rule that there must be a renunciation in writing, he proceeded to speak of the lapse of time as an aid to the defendant in making out such a renunciation. We have already seen that he erred in holding that a writing was necessary; and it cannot be very important to inquire whether he was strictly correct in what followed about the lapse of time. On the whole, we think the case went to the jury with instructions which were sufficiently favorable to the plaintiff, and that there has been no error in law of which he has a right to complain.

New trial denied.