## TAYLOR vs. MORRIS.

A testator, by his last will and testament, appointed three persons his executors, and authorized them, or the survivor of them, to sell and convey any part of his real estate, "*in case they should find it proper or most fit in their opinion,*" to sell the same for the purpose of paying his debts. Two of the executors neglected to qualify, and never acted as such. The other executor duly qualified, and took out letters testamentary in his own name only, and subsequently sold and conveyed a portion of the testator's real estate for the purpose specified in the will; *held*, that the power contained in the will was well executed, and that the conveyance was valid.

It seems, that the statute, (2 *R. S.* 109, § 55,) which provides, that, where real estate is devised to executors to be sold by them, or is ordered by any last will to be sold by them, and any of the executors neglect or refuse to qualify and act as such, the sale may be made by the executor or executors who take upon themselves the execution of the will, applies as well to *discretionary*, as to peremptory powers of sale.

EJECTMENT, brought by Andrew C. Morris against Robert L. Taylor, in the New-York common pleas, for an undivided fourteenth of a lot of land in that city. On the trial in the common pleas the case was this: Andrew Morris, the grandfather of the plaintiff below, died in 1828 seized in fee of the whole of the premises in question, having first made and published, in due form, his last will and testament, as follows:

"I Andrew Morris, of the city of New-York, do make this my last will and testament, revoking any I may have heretofore made. I direct my executrix and executors, hereinafter named, to pay my just debts out of my estate. I give my wife Ellinor all the silver plate and household furniture of every kind and description that I may be possessed of, together with one third of my personal property, leaving also to her her right of dower in my real estate. I give one half of the remainder of my estate, real and personal, to my daughter Margaret E. Willcocks, the wife of Lewis Willcocks, and to her heirs and assigns. And I give the other half of the remainder of my estate, real and personal, to the children of my son Thomas A. Morris, whom he now has or hereafter may have, to be divided equally among

them.  I hereby appoint my wife Ellinor my executrix, and my son Thomas A. Morris, and my son-in-law Lewis Willcocks, to be executors of this will.  *And I do hereby authorize them, or the survivor of them, to sell any part of my real estate, and give a deed or deeds for the same, in case they shall find it proper or most fit, in their opinion, to sell the same for the purpose of paying my debts.*  And I hereby appoint my said son Thomas, guardian of his children during their minority, and in case he should at any time consider it best and proper for their interest to sell their part of my real estate, then I authorize him to sell the same, or any part of it, and give a deed or deeds for any part he may sell, and put the money arising therefrom at interest, and appropriate such interest, or any income of this devise, for the education, benefit and bringing up of his said children.  *In testimony,*" &c.

The plaintiff was one of seven children which Thomas A. Morris had at the death of the testator, and claimed an undivided fourteenth of the premises under the will.  The defendant was in possession at the commencement of the suit, and claimed title under a sale and conveyance of the premises made by Lewis Willcocks, one of the executors named in the will.  The will was duly proved as a will of real estate before the surrogate of the city and county of New-York, in March, 1833, and in July, 1834, the said surrogate granted letters testamentary to the said Lewis Willcocks.  Ellinor Morris, the executrix, and Thomas A. Morris, the other executor, were not named in the letters, and never appeared, qualified, or acted as executrix and executor; but no formal steps were ever taken to procure their renunciation.

On the 17th of September, 1834, the said Lewis Willcocks, as sole acting and qualified executor, sold and conveyed the premises to Francis Salmon, who afterwards conveyed to the defendant.  Ellinor Morris joined in the deed to Salmon for the purpose merely of releasing her right of dower in the premises, describing herself in the deed as the widow of Andrew Morris, but not as executrix.  The deed recited, among other things, that she and Thomas A. Morris had declined to take upon

Taylor v. Morris.

themselves the execution of the will. It was admitted, on the trial, that the defendant's title was good, provided Lewis Willcocks had power under the will to sell and convey the real estate of the testator, without the concurrence of Thomas A. Morris, the other executor.

Upon these facts, the court of common pleas ruled, that under the will it was necessary that all the executors named should join in the conveyance in order to render it valid, and that as Thomas A. Morris had not joined in the conveyance to Salmon, the defendant had failed to make out a title. A verdict was accordingly taken for the plaintiff, on which judgment was rendered, and the supreme court on error affirmed such judgment. The defendant below brings error to this court.

*Frederick R. Sherman*, for plaintiff in error. The concurrence of Thomas A. Morris, the other executor, was not necessary to give validity to the deed. By statute, (2 *R. S.* 71, § 15,) every person named in a will as executor, and not named as such in the letters testamentary, shall be deemed superseded thereby, and shall have no power or authority whatever as executor. The mere will itself, therefore, does not in this state, as in England, make a person executor. He must appear and qualify, by taking the oath of office, and by taking out letters testamentary. A refusal or neglect to comply with these requisites, is, in effect, the same as a renunciation by record, of the trust. Thomas A. Morris and Ellinor Morris, not having complied with these requisites, are therefore to be considered as blotted out of the will, and this leaves Lewis Willcocks, in effect, the surviving executor. (*Roseboom* v. *Mosher*, 2 *Denio*, 63; *Sharp* v. *Pratt*, 15 *Wend.* 610; *Zeback's Lessee* v. *Smith*, 3 *Bin.* 69.)

The power in question was well executed under the revised statutes, (2 *R. S.* 109, § 55,) which declares, that when real estate is devised to executors to be sold, or where it is ordered to be sold by the executors, and any executor shall neglect or refuse to take upon him the execution of the will, then the sale, made by the executor who does take upon himself the execu

tion of the will, shall be valid, as if all had joined. (*Roseboom* v. *Mosher*, 2 *Denio*, 63 ; *Franklin* v. *Osgood*, 14 *John.* 554 ; *Sharp* v. *Pratt*, 15 *Wend.* 610 ; *Bunner & Mannings, executors*, v. *Storm*, 1 *Sand. Ch. Rep.* 357 ; *Ogden* v. *Smith*, 2 *Paige*, 198 ; *Hertell* v. *Van Buren*, 4 *Hill*, 494 ; *Zeback's Lessee* v. *Smith*, 3 *Bin.* 69 ; 3 *McCord's Rep.* (*S. C.*) 29 ; 1 *Dev. & Batt.* 389 ; 3 *Munf.* 345, 347 ; 6 *Rand.* 594 ; 1 *Hammond*, 232.)

The executors in the will in question take as executors *virtute officii*, and not *nominatim*, as individuals. They are appointed to sell by their official description, and are to apply the produce of the sale officially ; that is, to the payment of the testator's debts. The payment of debts is strictly an executorial duty, and the power to sell for that purpose is highly favored. (*Sug. on Pow.* 144 ; *Pow. on Dev.* 240 ; *Witherall* v. *Gartham*, 6 *T. R.* 396 ; *Jenk. Cent. p.* 44, *case* 83.)

The power contained in this will, viewed at common law, is not a mere naked power, but a power coupled with a trust, to wit, the payment of debts ; and there being also some interest in the executors themselves, the case falls directly within the principle of *Franklin* v. *Osgood*, (14 *John.* 554.)

The judgment of the supreme court should be reversed with costs.

*J. G. Ring*, for the defendant in error. The conveyance by Willcocks to Salmon, having been made without the concurrence of Thomas A. Morris, his co-executor, was void, and passed no estate in the land to Salmon.

A power or authority given to two or more persons cannot, in the nature of things, be executed by a less number than the whole. It is true that at common law a distinction was made between what was termed a *naked power* and what was termed *a power coupled with an interest*. The former could not be executed without the concurrence of the whole number of persons to whom it was given, and if one died or refused to act, the power could not be executed. (*Co. Litt.* 112 *b*, 113 *a*, 181 *b*, *Shep. Touch.* 449, *pl.* 9 ; *Powell on Devises*, 292, 310.) The

Taylor *v.* Morris.

latter might be executed by the survivor or by the person taking upon himself its execution ; (3 *Salk.* 277 ; 3 *Atk.* 714; 2 *P. Wms.* 102'; 1 *Caines' Cas. in Err.* 15 ; 3 *Cowen's R.* 654;) but a careful examination shows that there is nothing in these rules which militates against the above proposition. To understand the meaning of the terms "naked powers" and " powers coupled with an interest," as here applied, it is necessary to go back to *common law definitions.*

" A naked authority," says Powell in his treatise on devises, " is where a man devises that his executors shall sell his land, or orders his land to be sold by his executors, or appoints A. and B., whom he makes his executors, to sell his land. *In all these cases the executors have only a naked power,* and after the death of the testator the freehold descends to the heir." (*Pow. on Dev.* 292, 3.) The same writer says, " If lands be *devised to the executors* to be distributed for the good of the testator's soul, in this case the freehold is in the executors after the death of the testator and not in the heir. *By this devise they have authority coupled with an interest."* (*Id.* 301. *See also Sugden on Powers,* 129.)

These definitions render the reason of the rules alluded to perfectly intelligible. A *naked power* to *two* cannot *in the nature of things* be executed by *one,* because one is *not* two, and less than two does not satisfy the words of the donor. A *power coupled with an interest* can be executed by the survivor, &c. ; not indeed *as* a power, (and here lies the key to the whole difficulty,) because the same technical objection would here apply as to a naked power, that a *part* is not the *whole.* But the land being vested in all in *joint tenancy,* upon the death of one goes to the survivors by the *jus accrescendi,* (4 *Kent's Com.* 360,) and the *trust* (all powers whether naked or coupled with an interest were originally to direct uses and perform trusts,) (4 *Kent's Com.* 505, 314,) *follows the land ;* (2 *Story's Eq. Jur.* 288, § 976;) and a court of equity would compel the survivors to execute the trust ; and what a trustee may be compelled to do by suit he may *voluntarily do without suit.* ( 2 *Story's Eq. Jur.* 290, § 979.) The *power itself* actually becomes extinct,

but the trust surviving, a *duty*, and consequently an *authority* to execute it also survives. The rule was precisely the same where one of the trustees refused to accept the estate, which in such case would vest in the one accepting. (3 *Paige*, 421.)

In the case before the court the power is a *naked* one ; but were it otherwise, and were the land vested in the executors, the survivor could not, without the express authority given in the will, execute the power, because *there is no trust connected with it which a court of equity could enforce.*

At common law, neither a naked power nor a power coupled with an interest could be executed by less than the whole while the whole *were living and had not rejected the trust. (Sinclair* v. *Jackson,* 8 *Cowen,* 544 ; *Bogert* v. *Hertell,* 4 *Hill,* 514.) In the present case, Thomas A. Morris had neglected to qualify as *executor*, but he had not rejected the *trust. (Sugden on Pow.* 138 ; *Judson* v. *Gibbons,* 5 *Wend.* 227 ; 4 *Hill,* 508 512 ; 21 *Wend.* 436.)

The revised statutes (1 *R. S.* 735, § 112,) provide " where a power is vested in several persons, *all must unite in its execution ;* but if previous to such execution one or more shall die, the power may be executed by the survivor or survivors. The conveyance of Willcocks is void under this provision of the statute.

The revised statutes, (*vol.* 2, *p.* 109, § 55,) has no application to a case like the present, because the land is not *ordered to be sold.* This statute is substantially a re-enactment of the statute 21 Hen. 8, (*see* 2 *Paige,* 198,) which statute applies to *naked powers,* as is shown by the recital " whereas divers sundry persons before this time *having other persons seized to their uses* of and in lands," &c. and was enacted to remedy the inconvenience of a strict construction of the common law, where one of the executors refused to intermeddle, by enabling the other executors, who accepted, to sell, and rendering their disposition valid. (*Powell on Dev.* 310 ; *Sugd. on Powers,* 139 ; 7 *Dana,* 8.) It was unnecessary to extend the statute to powers coupled with an interest, (that is, where the donee also has the legal estate,) because the executors in such case had full power at common law.

Taylor v. Morris.

The section of the revised statutes referred to embraces both naked powers and powers coupled with an interest, the latter of course unnecessarily.

The language of the statute, 21 Hen. 8, is where testators have by their last wills *"willed and declared such their lands to be sold by their executors."* The language of the section of the revised statutes referred to is, *" or where such estate is ordered by any last will to be sold by the executors,"* &c.

Where land is ordered to be sold ; that is, where it appears from the will that the testator had determined to have it sold ; such a trust is created as would be enforced by a court of equity in case of the death or refusal of one or all of the executors ; and the statute does nothing more than *anticipate* the appointment of a trustee by a court of equity. But the statute has no application to cases like the present, where there is a *discretion* given to the executors to determine whether the land shall be sold or not. There is in such cases no *enforcible trust*, and the exercise of the discretion by less than the whole would be a manifest violation of the intention of the testator. (*Clay and Craig* v. *Hart*, 7 *Dana*, 2 ; *Wooldridge* v. *Watkins*, 3 *Bibb*, 349 ; *Coleman* v. *McKinney*, 3 *J. J. Marsh.* 248 ; *Peters* v. *Beverley*, 10 *Peters*, 532 ; 1 *R. S.* 734, § 96 ; *and as to execution of such a discretionary power at common law, see Sugden on Powers*, 145, 148, 222; *Moore*, 61, *pl.* 172 ; *Cole* v. *Wade*, 16 *Ves.* 27, 45, 46, 47 ; *Walter* v . *Maunde*, 19 *id.* 424; 7 *Dana*, 2, *and cases cited;* 2 *Story's Eq. Jur.* 397, § 1061.)

The testator directs his debts to be paid out of his estate ; which is the usual direction in all wills, and gives the executors no authority to meddle with the real estate. The method of paying debts "out of the *estate*," where no power is given by the will to sell *real estate*, is first to appropriate all the personal property to that purpose, and upon that proving to be insufficient, the executor applies to the surrogate for an order to sell the real estate ; before this can be obtained, it is necessary that all the heirs and devisees should be cited, and the executor must show " that the whole of the personal property which could be applied to the payment of debts of the deceased has

been duly applied for that purpose." (2 *R. S.* 102, § 14, *sub.* 3.) Under a power to sell real estate to pay debts, the executors ac without any check, and may *resort to the land in the first instance:* They may squander away every dollar of the per sonal property and still sell the real estate, and in answer to any complaint of the devisees they may say "*we think most fit and proper.*" (*See Roseboom* v. *Mosher,* 2 *Denio,* 62.)

The common law doctrine respecting powers given to indi dividuals "*nominatim,*" and powers given to them "*eo nomine,*" cannot affect the present case, because, 1st, the power is given to the executors *nominatim* and not *eo nomine.* (*Sugden on Powers,* 141, 2, 4; 4 *Kent's Com.* 326; *Powell on Dev.* 292; *Clay & Craig* v. *Hart,* 7 *Dana,* 2; 2 *Story's Eq. Jur.* 398.) 2d. A power to individuals *eo nomine* as "my executors" ccould not be executed by a *single* individual, because a single indi vidual did not answer the words of the donor, "executors" in the *plural.* In the language of Coke, it could only be executed while the *plural number remained.* 3d. The doctrine did not apply to cases of mere discretion. See *Clay & Craig* v. *Hart,* (7 *Dana,* 2,) in which case the power was given to the "execu tors" *eo nomine.* (*See also* 1 *R. S.* 735, § 112.)

The statute (2 *R. S.* 71, § 15) declaring that any executor not named in the will shall be deemed superseded, does not aid the execution of the power in question. For if the statute *did* sus pend the power of Thomas A. Morris, still *Willcocks acquired no additional power thereby.* But the statute *did not* suspend the powers of Thomas A. Morris as *trustee;* his powers as *executor* were suspended, but not his powers as *trustee.* (*Sug den on Pow.* 138; *Judson* v. *Gibbons* 5 *Wend.* 227; 4 *Hill,* 508, 512; 21 *Wend.* 432.) The object of the provision of the statute is manifest. At common law an executor might take pos session of the testator's personal property and perform nearly all the legitimate duties of an executor without taking out letters upon the will. (*Toller on Ex'rs,* 24.) This was a defect in the law, and it was to remedy this that the statute was enacted.

Taylor *v.* Morris.

RUGGLES, J. The question to be solved here is not whether the power of sale survives to the surviving executor. The will declares expressly that it shall so survive. But that case has not occurred. The executors were all living when the deed in question was executed under the power. Two of the three had, however, neglected to act under the will. Only one had taken upon himself the execution of the will. He executed the deed in question alone and without the concurrence of the others. This was not a valid execution of the power at common law, and whether it was good under the statute of this state, (2 *R. S.* 109, § 55,) is the question presented for decision.

The statute is as follows : " Sec. 55. Where any real estate or any interest therein is given or devised by any will legally executed, to the executors therein named, or any of them, to be sold by them or any of them, or where such estate is ordered by any last will to be sold by the executors, and any executor shall neglect or refuse to take upon him the execution of such will, then all sales made by the executor or executors, who shall take upon them the execution of such will, shall be equally valid, as if the other executors had joined in such sale." This statute is not a copy of 21 *H.* 8, *ch.* 4, but was intended un-. doubtedly to embrace all the cases adjudged to fall within the scope of the English act, and perhaps others.

But the plaintiff, who contests the validity of the deed, insists that the statute applies only to those cases in which the land is *ordered* to be sold by a positive and mandatory direction of the testator ; and not to the case of a mere power of sale, or where there is a discretion given to the executors to determine whether the land shall be sold or not. This distinction appears to be somewhat nice and refined ; one that might not occur to all readers of the statute. It seems to have slept unnoticed during the progress and termination of several contested cases in this state and elsewhere, in which the distinction, if sound, would have been fatal to conveyances that were ad udged, in those cases, to be valid.

In *Roseboom* v. *Mosher*, (2 *Denio*, 61,) the testator gave to his executors discretionary power to sell his lands, if in then

opinion, it should become necessary for the support and maintenance of his wife and children. One of the executors neglected to qualify, and the other who acted sold the land and executed the deed. It was regarded as a valid execution of the power under the statute. The case turned chiefly on the question whether proof of renunciation by one was necessary to enable the other to execute the power; and it was held that mere neglect to act was enough without a renunciation. The objection in that case would, if valid, have been fatal to the deed, but it was not raised by the counsel, nor suggested by the court.

*Sharp* v. *Pratt,* (15 *Wend.* 610,) was a case of the same kind. Nicholas Kiersted by his will appointed four executors, and *authorized* them to sell his real estate which he had devised to his children. Two of the executors acted under the will and conveyed the land without the concurrence of the others. The contested question in the case was, whether it was necessary to show, in support of the deed executed by the acting executors, that the others had renounced; and it was held not to be necessary. The objection now made was not raised; but the language of the court shows that the statute authorizing acting executors to execute the conveyance, was supposed to apply as well to a mere discretionary power, as to a mandatory order of sale. The court say, "the statute intended to depart from the rule of the common law, by declaring *that when power is given to several executors* to sell the land, it may be executed by such as take charge of the administration, if the others refuse or neglect to take on themselves the execution of the will;" and after some further remarks the court proceed to say, "The deed, therefore, was equally efficacious to transfer the title of the testator as if it had been executed by all the executors named in the will. In this respect *the statute makes no distinction between a devise to sell and a bare authority.*"

In *Bunner and Manning, ex'rs,* v. *Storm,* (1 *Sandf.* 357,) Thomas Storm empowered his five executors to sell his real estate. Two of them acted, two renounced, and one was an

infant. The two who acted sold the land under the power, and executed the deed without the concurrence of the others. In relation to the nature of the power, the vice chancellor said, " I am satisfied that the testator intended to make the executors the judges of the necessity for a sale." The question was whether the deed thus made by the acting executors was a valid execution of the power, and the vice chancellor adjudged that it was.

Here then are three cases in the courts of this state, in which discretionary powers of sale have been held to be within the statute, and well executed by acting executors without the concurrence of the others. If these cases are not regarded as adjudications settling the construction of the statute in this state, they furnish at least very strong proof of the general understanding of the profession and of the courts, that the statute embraces the case of a mere discretionary power as well as that of a peremptory direction.

But we are referred to three cases in the court of appeals of Kentucky, in which it is declared that where a power of sale is conferred upon executors, leaving it to their discretion whether to sell or not, and part of the executors renounce, the acting executors cannot execute the power.

By a statute of Kentucky, passed in 1799, it is enacted "that the sale and conveyance of lands *devised to be sold*, shall be made by the executors or such of them as shall undertake the execution of the will," &c. In one of the cases above mentioned, ( *Wooldridge* v. *Watkins*, 3 *Bibb*, 349,) it was held that this statute did not apply to a case in which the testator had " left it in the power of his executors to sell or exchange any part of his estate, real or personal, as they might judge necessary for the advantage of his estate." The opinion appears to have been founded on the reading of the act, and not upon any previous adjudication. No authority is cited. The case was decided in 1814.

In 1830, in the case of *Coleman* v. *McKinney*, (3 *J. J. Marshall*, 246,) it was held that the statute did apply to a case in which the testator had directed his executors to sell his lands

for the payment of his debts, if his personal estate should be insufficient for that purpose, because the contingency on which the sale was to be made did not depend on the judgment of the executors. In *Clay* v. *Hart,* (7 *Dana,* 1,) decided in 1838, that court affirmed the law as laid down in *Wooldridge* v. *Watkins,* and added that the like doctrine had been long and incontrovertibly settled in England, in reference to the statute of 21 *H.* 8, *ch.* 4. English books were referred to in support of that construcion. But with the greatest respect for that learned court, I am compelled to say, that I find nothing in the books referred to to uphold the doctrine. On the contrary, Mr. Sugden in his treatise on powers, at the place referred to, (*p.* 75,) says that formerly *where a power was given* to executors to sell, and one of them refused the trust, it was clear that the others could not sell, but that the 21 *H.* 8, *ch.* 4, had altered the law in that respect. The doctrine derives no support from the case cited from Moore's reports, p. 61. That was not the case of a power of sale executed by an acting executor without the concurrence of a co-executor who had renounced. Nor was it the case of a power in which the executors had a discretion to sell or not. But it was a case in which the land was devised to be sold by the testator's executors, or by the executors of his executors. One of the testator's executors died intestate, and the survivor appointed executors and died; and the question was whether the executors of the surviving executor could make the sale. It was adjudged that they could not, because the power was committed not to them alone, but to them jointly with the executors of the other executor. This case throws no light upon the construction of the statute 21 *H.* 8. It shows simply that a joint power cannot, at common law, be executed by a part of those to whom it was entrusted, and without the concurrence of the rest. It was not a case within the 21 *H.* 8, because both the original executors were dead. Nor are the cases of *Cole* v. *Wade,* (16 *Ves.* 27,) and *Walter* v. *Maunde,* (19 *id.* 424,) any more satisfactory on this point. There the trust was to divide the estate of Sir Charles Boothe, among his nearest and most deserving relations—the distribu

tion to be made entirely in the discretion of the trustees. The trust was to be executed by *Ruddle* and *Wade*, the executors, *and the heirs, executors and administrators of the survivor of them.* It was declared that the devisees of the surviving trustee (who were not his heirs,) could not execute the trust, they not being the persons designated therefor by Sir Charles Boothe, the original testator. The case has no relation whatever to the statute 21 *H.* 8.

. After bestowing some pains upon the search, I have not been able to find any English adjudication or dictum that the operation of the statute 21 *H.* 8, *ch.* 4, is limited to the case of a peremptory order to sell. Lord Coke speaks of it as embracing the case of " *a power to sell.*" In his commentary upon Littleton, 113, a, he says, " In Littleton's case admit that one executor had refused to sell, then as the law stood when Littleton wrote, it was clear that the others could not sell. But now by the statute 21 *H.* 8, it is provided that when lands are willed to be sold by executors, though part of them refuse, yet the residue may sell: And albeit the letter of the law extendeth only *where executors have a power to sell,* yet being a beneficial law it is by construction extended where lands are devised to executors to be sold." Mr. Preston in his essay on abstracts of title (*vol.* 2, *p.* 253,) repeats the language of Lord Coke, saying, " This statute has been construed to extend as well to lands which are actually devised to be sold to two or more executors, as to lands *over which there is merely an authority ;*" and in no English book can I find the trace of such ι distinction as that upon which the decision was founded in the case of *Clay* v. *Hart.*

In *Jackson* v. *Given*, (16 *John.* 170,) Mr. Justice Platt seemed to have in his mind the distinction contended for on the part of the plaintiff. But that case presented a case of survivorship and not a question under the statute. It was so treated by the counsel. The testator made four executors, and directed them *or any two of them,* to sell his estate upon his wife's death or re-marriage. Two of them died without qualifying. Two qualified as executors and afterwards one of them died, and

the survivor sold and conveyed the estate. The two who quali-
fied were authorized to sell by the express terms of the power.
If the power survived, there was no need of the aid of the stat-
ute. If it did not, the statute could not aid the sale, because
it was not made "by the executors who took upon them the
execution of the will," one of them being dead. Under such
circumstances the observation made by the learned justice at
the commencement of his opinion, ought not to be regarded as
authority, especially when taken in connexion with the subse-
quent cases heretofore mentioned.

The distinction upon which the court acted in the cases of
*Wooldridge* v. *Watkins*, and *Clay* v. *Hart*, in the state of
Kentucky, does not seem to have been recognized in any other
state.

The Pennsylvania case of *Zebach's lessee* v. *Smith*, (3 *Bin-
ney*, 69,) is against the Kentucky decisions. Bartholomew Ze-
bach made his will, appointing three executors, and empowered
them as follows: "to sell my land in Shamokin, on Penn's
creek, in the old purchase, and to give good right. When my
debts are paid, if any thing should remain, my wife shall buy
two cows," &c. Two of the executors renounced and the
other conveyed the land. There was no imperative direction
to sell. The counsel for the plaintiff supposed that case to differ
from the one in hand in this particular, that in the case of Ze-
bach's will there was a trust which the creditors could have
enforced in equity; but that in the will in question there was
not such a trust. But it seems to me there was such a trust 'n
both cases, and more plainly so in the case of Morris' will than
that of Zebach, because in Morris' will the power is given ex-
pressly for the payment of debts, and in Zebach's it is only so
by inference. The creditors have an interest in the execution
of the power; and in case of a deficiency of personal estate, it
ceases to be a matter of discretion in the executors whether to
sell or not; it becomes their duty to sell. It is true the creditors
may have another remedy, and perhaps a better one than a bill
in equity against the executor to enforce the execution of the
power, to wit, by application under the statute for an order to

sell. But that does not change the character of the power, nor exonerate the executor from his duty to the creditors.

In *Chanet* v. *Villeponteaux*, (3 *M'Cord's South Car. Rep.*) the testator devised his lands to be sold *at the discretion of his executors*, of whom there were two. One went to France without having qualified, and the acting executor made the sale and conveyance. It was adjudged to be a case within the 21 *H.* 8, which had been re-enacted in that state.

In *Wood* v. *Sparks*, (1 *Dev. & Bat. N. Car. Rep.*) the testator, by his will, made three executors, only one of whom qualified. That one, without the others, sold and conveyed the land under a power expressed in these words, "*If my executors should think it best*, I wish them to sell my real estate in the town of Plymouth, to the best advantage for the benefit of my children." The conveyance was adjudged to be a valid execution of the power by virtue of the statute 21 *H.* 8, *ch.* 4. It is true that no point appears to have been made in this case upon the discretionary character of the power. That question was not raised, although the case occurred more than twenty years after the decision of the case of *Wooldridge* v. *Watkins*.

But the question has been raised, argued and decided in the court of appeals of Virginia, and the decision was adverse to the rule adopted in Kentucky. It is worthy of observation that the statutes of Virginia and Kentucky, on this subject, are precisely alike, excepting that the statute of Virginia authorizes the administrator, with the will annexed, to execute the power of sale when all the executors refuse to act, in the same cases in which the acting executor can execute it when part of the executors refuse. The case alluded to was that of *Brown* v. *Armistead*, reported in 6 *Rand.* 593. The power of sale in the testator's will was in these words: " My will and desire is that my executors hereinafter appointed, sell, at public sale, all my land, provided the said land will sell for as much, in their judgment, as will be equal to its value; and the money arising from such sale to be placed in the hands of my friend *Stark Armistead*, one of my executors hereafter appointed, whom I vest with power to apply the said money to any use or uses he

in his discretion may deem best for the benefit of my wife and all my children." The testator appointed three executors, all of whom refused to act. The sale was made and conveyance executed by the administrator with the will annexed. Judge Carr, in delivering the opinion of the court, says, " This statute," (speaking of that part of it of which the Kentucky statute is a copy,) " was taken from the 21 *H.* 8, *ch.* 4. It was admitted in the argument that if the testator had directed a positive and unconditional sale of the land by his executors, the case would have come directly within the law. But they are directed to sell provided the land will sell for as much, in their judgment, as will be equal to its value; and this, it is insisted, renders it a special confidence reposed in the individuals appointed executors, which *is personal to them,* and can only be exercised by them, and not even by a part of them, but by the whole only. This point was argued with great strength, but the researches of the counsel had enabled him to produce no cases in support of it, nor have I found any." The power was adjudged to be well executed. The opinion of the court was unanimous, excepting that one of the five judges was absent.

The argument on the part of the plaintiff is founded on the assumption that the statute, in speaking of lands " ordered to be sold," speaks only of those which the executors are peremptorily commanded to sell. But that would be a strict and narrow construction of a remedial and beneficial statute, the object of which was to prevent the failure of the power, and to carry out the intention of the testator as far as possible by the agents of his own selection. Although an authority to an executor to sell is not a command that he *shall* sell, it is substantially an order that he *may* sell.

The statute was designed as a remedy for the oversight of a testator in not providing for the contingency that some of his executors might refuse to serve; and it was framed upon the presumption and belief that if that contingency had been foreseen, the testator would have preferred that one of his executors should execute the power alone, rather than it should fail. This presumption applies with as much force to the case of a

discretionary power as to one of a mandatory character. Very many testators are not aware of the common law rule, that in the execution of a joint power it is indispensable that all must unite. And in appointing the agents to execute a power involving the exercise of discretion, it is natural to suppose that each one would be selected with reference to his fitness and capacity for the trust. This inference is natural and fair in all cases where the testator has not thought proper to say expressly that a certain number must unite in the sale. Gaston, J. in *Wood* v. *Sparks*, (1 *Dev. & Bat.* 392,) says, " the great purpose of the statute, (21 *H.* 8, *ch.* 4,) is to correct mischiefs resulting from a rigid construction of these testamentary authorities, and it is the rule of law to so expound the act as to suppress these mischiefs and apply its remedies." In the present case the power of sale was expressly given to the surviving executor: and the testator thereby manifested his intention that in a certain event the power might be executed by one only of the three donees. It is true the event contemplated has not occurred ; that is to say, Willcocks is not the surviving executor, and therefore at common law the power could not be executed by him alone ; but if the testator in this case had not deemed each separate executor capable of executing the power alone, he would not have authorized its execution by the survivor ; and in *Zebach's lessee* v. *Smith,* Yeates, J. says that by the statute 21 H. 8, an acting executor upon the renunciation of the others is put upon the footing of a surviving executor. The statute in fact goes further. It enables the acting executor to execute the power in those cases in which the survivor would not have that authority by the common law.

I am satisfied both on principle and on authority that the statute should be held to extend to all powers of sale conferred on executors, whether they involve the exercise of discretion, or are peremptory in their character. Wills may thus be carried into effect according to their true intention, when otherwise they would be defeated by circumstances unforeseen by the testator The judgment of the supreme court and of the New-York common pleas should be reversed, and a *venire de novo* awarded.

Taylor *v.* Morris.

JEWETT, Ch. J.   The devise did not pass any *interest* in the real estate of the testator to the executrix and executors named, but merely conferred on such of them as took letters testamentary thereon a power to sell and convey all or any part of his real estate, in case they in their opinion should find it proper or most fit to do so, to pay the debts of the testator.

This power is a mere naked power, not coupled with any interest whatever, and at common law could not have been executed by one of the three executors named. (4 *Kent's Com. 5th ed.* 320, *n. c. ; Sharpsteen* v. *Tillou,* 3 *Cow.* 651 ; *Bergen* v. *Bennett,* 1 *Caines' Cases in Err.* 15 ; *Jackson* v. *Schauber,* 7 *Cowen,* 187.)   And now by statute, (1 *R. S.* 735, § 112,) when a power is vested in several persons all must unite in its execution, unless previous to its execution one or more of such persons shall die ; in that case the power may be executed by the survivor or survivors.   But this provision is limited and controlled by the provisions of the statute.   (2 *R. S.* 109, § 55.)   It is, however, contended that this statute does not affect the question, on the ground that the estate is not *ordered,* but merely *authorized* to be sold, upon the contingency that the three executors named, or the survivor of them, should in their opinion find it proper or more fit to sell it for the purpose of paying the testator's debts, and that the statute only operates upon and makes valid conveyances of land made by one of several executors in the case mentioned, where the testator *commands* or *imperatively* directs a sale to be made ; and does not extend to the case where a sale is merely *permitted* or *authorized* in the *discretion* of his executors.

The statute was passed to remedy the inconvenience, where some of the executors refuse or neglect to act, as executors ; by reason of which such power conferred could not, by the principles of the common law, be executed ; as all were required to concur in the act authorized to be done.   The mischief is the same in effect, in the case where the testator has by his will *authorized* his executors in their *discretion* to sell his lands to pay his debts, &c. when some of his executors neglect or refuse to take upon tnemselves the execution of his will, as in the

case where the same act is commanded or ordered to be done; and I think that the statute should receive a liberal construction, such as will suppress the mischief and advance the remedy, which is to render sales made under such power or authority by the executor or executors who do take upon them the execution of such will equally valid as if all of the executors named in the will had joined in the sale. It is by no means unusual, in construing a remedial statute, to extend the enacting words beyond their natural import and effect, in order to include cases within the same mischief. (*Dwarris on Stat.* 735.) My conclusion is that Willcocks had power under the will to convey the real estate of the testator, without the concurrence of his co-executor named in the will.

Judgment reversed.